JAMES M. CLOUD, Respondent, *v.* ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

### June 12, 1883.

1. RAILROADS — CONTRACT WITH PASSENGER. — The terms of a "round trip" ticket which provides that it must be stamped and the passenger's signature witnessed for identification by the connecting carrier before the passenger begins the return trip, are valid and binding.

2. —— DAMAGES. — The purchaser of such a ticket who has failed to comply with its terms can not, in the absence of evidence of a waiver or of want of opportunity to know its contents when he purchased it, have an action against the railroad because he was ejected from the car of a connecting road for failure to pay his fare.

3. —— AGENCY — WAIVER. — The contract having been made by the agent of a line of connecting roads, the waiver of its terms by one of the roads will not bind the others.

4. —— A railroad passenger conductor is not a general agent of the road authorized to waive the terms of a written contract of carriage.

APPEAL from the St. Louis Circuit Court, HORNER, J.
*Reversed and remanded.*

BENNETT PIKE, for the appellant: The selling of the
coupon ticket by the agent of the Mobile and Ohio Railway
over its own line and that of defendant, and the other lines
of railway to Niagara Falls and return, did not make the
said railways joint contractors. — *Furstenheim* v. *Railroad
Co.*, 9 Heisk. 852–858; *Hood* v. *Railroad Co.*, 22 Conn.
1; *Knight* v. *Railroad Co.*, 56 Me. 235. Even if it
should be held that the contract implied from selling the
coupon ticket to plaintiff by the agent at Mobile, of the
Mobile and Ohio Railroad, is a joint contract of all the
other carriers named in the coupons attached to the ticket,
then the fact that the conductors of the other railway lines
did not insist upon a compliance with the violated condition
did not operate as an estoppel or waiver as against defend-
ant demanding a forfeiture, on account of plaintiff's fail-
ure to perform the same. — *Sherman* v. *Railroad Co.*, 40
Iowa, 45; Thompson on Carriers, 337; 6 Am. & Eng.
R. Cas. 333–339; *Jerome* v. *Smith*, 48 Vt. 230; *Downs*
v. *Railway Co.*, 36 Conn. 287; *Chicago, etc., R. Co.*
v. *Griffin*, 68 Ill. 499; *Pullman Palace Car Co.* v.
*Reed*, 75 Ill. 125; *Shelton* v. *Railway Co.*, 29 Ohio
St. 214; *Frederick* v. *Railroad Co.*, 37 Mich. 342;
*Thompson* v. *Railroad Co.*, 56 N. Y. 295. The mere fact
one conductor has wrongfully accepted a ticket, does not
bind a subsequent conductor likewise to receive it. — *Town-
send* v. *Railroad Co.*, 56 N. Y. 295; *Shelton* v. *Railroad
Co.*, 29 Ohio St. 214. The receipt of an expired ticket
by one conductor is not binding upon another conductor of
the same line, so as to oblige him to receive it for pas-
sage. — *Hill* v. *Railroad Co.*, 63 N. Y. 101; *Johnson* v.
*Railroad Co.*, 46 N. H. 213; *Stone* v. *Railway Co.*, 47
Iowa, 82; *Kelly* v. *Railroad Co.*, 67 Me. 173; *Wakefield* v.
*Railroad Co.*, 117 Mass. 544; *Sherman* v. *Railroad Co.*,
40 Iowa, 45; *Dietrich* v. *Railroad Co.*, 71 Pa. St. 432.

Leroy B. Valliant, with whom is Robert Crawford, for the respondent: An ordinary railroad ticket is a token and not a contract. — Thompson on Carriers, 423. The ticket in this case was one of those " artfully prepared " tickets, " contrived by scheming corporations and soulless companies, thrust upon the public without an opportunity of fair assent, in the press and hurry of railroad travel," condemned by our supreme court in *Levering* v. *Union Transportation Co.* (42 Mo. 88.) The terms of the limitations of the rights in the ticket must be plain and legible, and in such manner that it could not be overlooked. — Hutchinson on Carriers, sects. 245, 582. A condition on the ticket is not binding unless it is shown that the purchaser assented to it. — *Railway Co.* v. *Stevens*, 5 Otto, 655. This was but a regulation to insure that the same person, and none other, who purchased the ticket, used it. If we admit that it was a reasonable regulation, still it is not sufficient that it be reasonable in itself — it must be reasonably enforced. — Thompson on Carriers, 315. If no demand is made on him to comply with the regulation when in a position to do so, he does not forfeit his rights. — Hutchinson on Carriers, sect. 590 ; *Bass* v. *Railroad Co.*, 36 Wis. 450. When a forfeiture is claimed the language must be strictly construed. The language here is not that a failure to comply with either one of these conditions will work a forfeiture, but a failure to comply with all " conditions." — *Evans* v. *Railway Co.*, 11 Mo. App. 463.

Thompson, J., delivered the opinion of the court.

This is an action for damages alleged to have been sustained by the plaintiff in consequence of being expelled from one of the defendant's passenger trains upon which the plaintiff was traveling as a passenger. . The plaintiff's case is this : He is a resident of Mobile, Alabama. On the 21st of June, 1880, he purchased of James W. Rooney, agent of the Mobile and

Ohio Railroad Company at Mobile, Alabama, what is known as a round trip coupon railway ticket, from Mobile to Niagara Falls and return, good until the 31st of October following. The connecting lines called for in this ticket were the Mobile and Ohio Railroad, the St. Louis, Iron Mountain and Southern Railway, the Chicago and Alton Railroad, the Michigan Central Railroad, and the Great Western Railway of Canada. This ticket embodied the terms of a special contract. It was dated in ink as of the date and place of its sale, and was signed in ink by James W. Rooney, as agent of the Mobile and Ohio Railroad Company, who sold it to the plaintiff, and by the plaintiff as purchaser. As thus dated and signed, it read upon its face as follows : —

## "MOBILE AND OHIO RAILROAD.

*"Mobile — Ohio — To Niagara Falls and return."*

" Summer Excursion Ticket. Good for one first class passage, when stamped by company's agent and presented with checks attached, subject to the following contract : —

" In consideration of the reduced rate at which this ticket is sold, I hereby agree to the following restrictions and conditions : That it is positively not transferable, and that I will use this ticket within fifteen (15) days from date of sale (as stamped on back and written below) going north, and within sixty (60) days from date of departure going south, and in no case later than October 31st, following date of sale. I further agree that on or one day before my departure south, I will identify myself as the original purchaser, by writing my signature on the back of this contract in the presence of the authorized agent of the Great Western Railway at Niagara Falls, who will witness the same. I also agree that this ticket shall not be honored for passage, if there are any alterations or erasures in signatures or dates stamped and written thereon.

" I further agree to sign my name, as a means of identifying myself as the original purchaser of this ticket, when-

ever called upon to do so by any of the conductors of the various lines over which this ticket reads, and that this ticket will be void if these conditions are not complied with. Fully understanding the above conditions, I accept.

Signature,                    JAMES M. CLOUD, *Purchaser.*
Witness,                      JAMES W. ROONEY, *Agent.*

Date of sale, June 21, 1880.

To Purchaser: Read the contract and take notice that the return part of this ticket must be stamped and your signature witnessed by the ticket agent of the Great Western Railway at Niagara Falls before it will be honored for passage. x 134. ⎫⎬⎭ CHARLES L. FITCH, G. P. A.

On its reverse side it was stamped by the agent who sold it to the plaintiff, and, as thus stamped it read as follows:—

AGENT OF THE MOBILE & OHIO R. R. WILL STAMP IN SPACE BELOW.

TICKET AGENT GREAT WESTERN RAILWAY WILL STAMP IN SPACE BELOW

| MOBILE & OHIO R. R. June 21, 1880. J. W. ROONEY, *Tkt. Agt.,* MOBILE, ALA. |
|---|

In compliance with my contract with the Mobile & Ohio Railroad, and lines over which this ticket reads, I hereby subscribe my name as the original purchaser of this ticket.

*Witness:*  _____
           _____

           *Ticket Agent Great Western Railway.*
Dated, NIAGARA FALLS, ——, 187 .

The plaintiff, immediately after purchasing this ticket, went on board a passenger train of the Mobile and Ohio Railroad Company, and proceeded over the connecting railroads named therein to Niagara Falls, New York. He remained at Niagara Falls, at Buffalo, and in Northern Pennsylvania, until about the 4th of the following October, when he proceeded to get on board one of the passenger trains of the Great Western Railway to return to Mobile. Before going on board, he was asked by the conductor of the train to show his ticket, which he did, and, according to his testimony, which, for the purposes of the case, we shall take to be true, this conductor told him to go along in. He did so, and the conductor honored his ticket by taking up the coupon which called for that part of the transit; so did the conductor on the Michigan Central Railroad, which was the next connecting line; so did the conductor on the Chicago and Alton road; and this brought the plaintiff, in the course of his home journey, to the defendant's railroad at St. Louis. When the conductor of the defendant's road examined the ticket, he refused to honor it, on the ground that it had not been signed in the presence of the agent of the Great Western Railway Company at Niagara Falls, as required by the terms; and, accordingly, he put the plaintiff off the train at De Soto, Missouri.

We shall not set out the substance of the testimony upon the question of damages, but shall remark that there is no ground disclosed by the pleadings and evidence for the recovery of damages growing out of *the manner* in which the conductor put the plaintiff off its train; so that if the plaintiff was rightfully put off — that is if he had no right, under the terms of the contract, to continue his journey without paying fare, — he can not recover in this action.

This being the case made by the plaintiff as the basis of his right of action, the defendant introduced no evidence, but asked for an instruction in the nature of a demurrer to the plaintiff's evidence, which the court refused to give;

and thereupon, after being instructed by the court, the jury returned a verdict for the plaintiff for $2,000, $800 of which the plaintiff afterwards remitted.

We shall address ourselves only to the propriety of sending this case to the jury at all, because it seems to us entirely clear that the plaintiff had no case whatever. The only possible grounds on which the plaintiff could expect to recover in the face of the contract which he had thus signed, and with an essential condition of which he had not complied, was either that he had not had an opportunity of knowing the conditions of the contract at the time he signed it, or before the time came for performing the condition named therein ; or else that this condition had been waived by an agent of the defendant, competent to waive it.

Upon the first point, there is no possible ground upon which a jury could say that the plaintiff did not have the amplest opportunity of informing himself fully of the conditions of this contract between the 21st of June, when he signed it at Mobile, and the fourth day of October, when he presented it to the conductor of the Great Western Railway at Niagara Falls. He must have exhibited it several times to the train conductors on his northward journey soon after he purchased it. He certainly had abundant leisure during the two days consumed in that journey to read it, and little else to do ; and he says himself in his testimony : " I had forty chances if I had had any occasion to read it." Not to have read it under these circumstances, was the grossest negligence on his part, to say the least, for which he is now endeavoring to mulct this defendant in heavy damages. But we need not dwell on this point ; for when a man has deliberately signed a written contract, and brings an action at law, in a court of justice, to assert rights acquired by that contract, he will not be heard to deny that it is his contract, or to assert that he did not know its contents. He must stand or fall upon the contract as he entered into it. If he chose to sign it without reading it, then he adopted its terms without reading them. He can not ask us to hold that it is

valid in part and void in part ; valid so far as it works in his favor, and void so far as it works against him.

Then, as to the question whether there has been a waiver of the condition in this contract which required the plaintiff to identify himself to the agent of the Great Western Railway Company, at Niagara Falls, by signing his name on the reverse side of the ticket in the presence of such agent, such as was binding on this defendant, it is necessary to consider in the first place the nature of the contract. It is argued for the defendant, that this contract is not the joint contract of the various railroads named therein, and in support of this view, the decision of this court in the case of *Lin* v. *The Terre Haute, etc., R. Co.* (10 Mo. App. 125) is cited. Upon this point we distinctly limited ourselves, in that case, to the decision of what the case called for ; and what we decided was this : that a contract of this kind, that is a railroad coupon ticket, which purports to take the holder over several connecting railways, becomes the contract of each one of such railway companies, as soon as such company adopts it by undertaking to carry the passenger under it. We did not think it necessary, under the facts of that case, to go further, and hold whether such a ticket is, in its inception, the joint contract of all the connecting carriers. The facts in this case call for the same ruling. This contract was adopted and ratified by each one of the connecting roads in carrying the plaintiff under it on the northward journey, and in taking up, through their train conductors, the appropriate coupons. By doing this through their train conductors, who were unquestionably their appropriate agents to perform such an act, each one of the connecting companies made this contract its own. We may properly go a step further, under the evidence, in this case. Mr. Rooney, who sold this ticket to the plaintiff, testified that it was sold under an arrangement between the connecting roads, under which they prorated the money received according to the mileage. As there is no evidence to contradict this, it may fairly be said

upon the evidence, that the contract which this ticket imported was a contract between this plaintiff and each of the connecting railway companies named in the coupons thereto attached, executed by himself on the one part, and by the Mobile and Ohio Railway Company, as the agent of the other connecting carriers, on the other part. But that it was a joint contract in the sense that any one of the connecting carriers could waive any of its terms and that this waiver would be binding upon the others, we decline to hold. Our opinion is that this contract became the contract of each one of the connecting carriers with this plaintiff, so far as it related to the transit over the road of such carrier. If we are right in this, any waiver, even by an authorized agent of the Great Western Railway Company, or the Michigan Central Railway Company, or the Chicago and Alton Railway Company, of any condition in the contract, would not be binding upon this defendant.

But it is not shown that the *train conductors*, of the roads named had any authority to waive this condition in the contract. By the terms of this contract, a special person was appointed before whom the remaining condition of the contract was to be executed, namely, " the authorized agent of the Great Western Railway at Niagara Falls." The reverse side of the contract shows that, by the term " authorized agent "the contract meant the " ticket agent " of the Great Western Railway. It would do violence to these terms to hold that a train conductor of the Great Western Railway was intended by them. Whether the ticket agent of the Great Western Railway at Niagara Falls could have waived a compliance with this condition of the contract so as to bind all the connecting carriers, we need not consider. Possibly he could have done so, if the ticket had been presented to him by the plaintiff, and if the plaintiff had offered to identify himself and sign his name on the reverse side of it, as required by its terms. *Gregory* v. *Railroad Co.* 10 Neb. 250. But where a particular agent is appointed to execute a stipulation

in a contract, it is clear of doubt that the execution of such stipulation can not be waived by another agent inferior in authority to the former. No case has been pointed out to us which sustains the plaintiff's position in this respect, and we believe that none can be found. On the contrary, it has been often held, as between conductors of the same railway company, that the unauthorized act of one conductor in honoring a ticket, which, by its terms, the company is not bound to honor, is not binding upon a succeeding conductor, to whom the same ticket may be presented by the same passenger, and that the refusal of the latter to honor it, and the consequent expulsion of the passenger, give him no cause of action against the company. The conductor can not be expected to accept the statements of passengers as to what previous conductors have done. *Dietrich* v. *Penn. R. Co.,* 71 Pa. St. 432 ; *Sherman* v. *Chicago, etc., R. Co.,* 40 Iowa, 45 ; *Hill* v. *Syracuse, etc., R. Co.,* 63 N. Y. 101 ; *Wakefield* v. *South Boston R. Co.,* 117 Mass. 544. For much stronger reasons, the voluntary act of the train conductor of one connecting railway in honoring a coupon ticket, which, by its terms, none of the connecting carriers is bound to honor, will not bind any succeeding carrier. To hold otherwise would destroy these contracts entirely, and would be equivalent to holding that railway companies can not make valid contracts of this kind.

These contracts are reasonable and valid. The condition which requires the passenger to identify himself to an agent of one of the companies, is a reasonable condition. It is intended to prevent the tickets from passing into the hands of third persons and being used by others in making portions of the transit where higher rates of fare are required than the special rates which the companies are able to make to through passengers traveling long distances.

We accordingly think that there was no case to go to the jury, and we therefore reverse the judgment and remand the cause. All the judges concur.