MORSE *v.* SOUTHERN RAILWAY COMPANY.

According to the principle laid down in the case of *Head* v. *Georgia Pacific Railway Co.*, 79 *Ga.* 358, and in view of the evidence disclosed by the record, this court, without intimating what the verdict should be, is of

the opinion that the present case should have been submitted to the jury and not disposed of by the grant of a nonsuit.

LUMPKIN, P. J.   I concur in the judgment, because bound by the decision in the *Head* case, supra; but the same being under review, I think it should be overruled.

Argued April 17, Reargued May 31,—Decided August 7, 1897.

Action for damages.    Before Judge Kimsey.    Hall superior court.    July term, 1896.

Charles Morse sued the railway company for expelling him from its passenger-train.    A nonsuit was granted, and he excepted.

It appears that on September 17, 1895, he purchased of the agent of defendant in New York a special excursion ticket, at a reduced rate, for going to and returning from Atlanta, Ga., and that within the time limited by the ticket, having used the same for going to Atlanta, he entered defendant's train for the purpose of making the return journey on the balance of the ticket, but on his presenting the same the train-conductor refused to receive it, upon the ground that it had not been officially stamped as required by one of the terms of the contract printed thereon, and ordered him to leave the train at the next station.    Plaintiff did not do this, and at the second station where the train stopped the conductor ejected him therefrom. The conditions printed upon the ticket, so far as material, were, that the same was not transferable and should be void and taken up if presented by any person other than the purchaser; that it was not good for return passage unless the holder identified himself as the original purchaser to the satisfaction of the joint agent of terminal lines at Atlanta, Ga., and when officially signed and dated in ink and duly stamped; that unless all the conditions on this ticket were fully complied with, it should be void; and "that I, the original purchaser, hereby agree to sign my name and otherwise identify myself as such whenever called upon to do so by the conductor or agent of any of the lines over which this ticket reads, and on my failure or refusal, this ticket shall become thereafter void."    In its caption was a caution that any one attempting to use this ticket by imitating the signature of the original purchaser

would render himself liable to prosecution for forgery; and upon its face was a notice to the purchaser to read the contract and take notice that it must be stamped and his signature witnessed by the joint agent of the terminal lines at Atlanta, before it would be honored for return passage.   The name of Charles Morse was signed as that of the original purchaser of the ticket, and this name was written in ink both on the front and back of the ticket introduced in evidence.   Plaintiff testified that he stayed in Atlanta from September 18 to October 10, 1895, at two named hotels, giving their street numbers. He signed his name to the ticket because he was requested to do so by the New York agent, who witnessed his signature. Before taking the train on his attempt to return, he presented the ticket at the office of the joint terminal, a ticket-office located near the union depot in Atlanta, to have it officially stamped.   The agent requested him to sign the ticket, and he did so.   The agent then said that the signature did not correspond with the one signed in New York, and asked him if he had any other way of identification.   He replied he was a stranger in Atlanta but had some letters received that morning, which he produced and showed to the agent, even showing him the contents of one.   The agent still refused to stamp the ticket, and upon being asked what plaintiff could do, told him to take it back to the man he bought it from and make him give him back his money.   Plaintiff stated that the man who sold it to him was in New York, to which the agent replied, "O, I guess you can take it over to the Gridiron all right," referring to a cut-rate ticket-office near by.   Plaintiff then left, but soon returned and again requested the agent to stamp the ticket, but he decidedly refused to do so.   Plaintiff used all the means within his power to identify himself as the original purchaser, and when on the train, informed the conductor of the agent's refusal to stamp the ticket.   He did not become acquainted with the landlords of either of the hotels he stopped at in Atlanta, except to speak to them on business matters.   He did not know any one in Atlanta, and there was no one that knew him.   He did not know that the ticket was worthless unless stamped and signed; did not know that the

conductor would have refused it for passage. The conductor did not take it up. The ticket introduced in evidence is the one he purchased and attempted to use on his return.

*W. R. Hammond, L. P. Skeen* and *Prior & Thompson*, for plaintiff.

*Dorsey, Brewster & Howell, J. B. Estes* and *Sanders McDaniel*, for defendant.

SIMMONS, C. J. This case has been twice argued; once before the first division of the court, and subsequently before the court as a whole. In the latter argument, leave was asked and permission given by the court to review the case of *Head* v. *Georgia Pacific Ry. Co.*, 79 *Ga.* 358. After a full consideration of that case, five members of the court think that it is a sound exposition of the law of this State, and decline, therefore, to overrule it. Presiding Justice Lumpkin differs with us, and thinks that it should be overruled.

The *Head* case is so well reasoned by Bleckley, C. J., that I shall not attempt further to elaborate it. Under the principles of that case, Morse, the plaintiff in this case, was entitled to recover from the railroad company, if he had fully complied with the conditions of his contract with the company. Whether he did fully comply therewith was, in our opinion, a question for the jury, on which we now express no opinion. On the next trial, on that branch of the case the question will be whether Morse identified himself to the satisfaction of the agent. If he did so, and the agent arbitrarily refused to validate the ticket, and Morse notwithstanding this fact got upon the train and was ejected therefrom by the conductor, he would be entitled to recover. If, upon the other hand, he did not comply with the conditions of his contract and failed to furnish such proof of his identity as would satisfy the agent, then he can not recover. In his contract he agreed to do this. He agreed to furnish such proof of his identity as would satisfy a reasonable man—a man who was seeking to do justice between his company and the other party. No rule can be laid down as to the amount of proof such a person should furnish in order to satisfy the agent. I should think it would depend

largely upon the circumstances and upon the person who was seeking to identify himself. The agent may be acquainted with one person and his character, and might deem that person's signature and his own knowledge of him sufficient; while, upon the other hand, if the applicant were an utter stranger, the agent might require more proof. At all events, the ticket-holder must furnish such proof of his identity as would satisfy a reasonable man. We think that under the terms of this contract the agent can not disregard reasonable proof of identity and arbitrarily decline to validate the ticket. For these reasons we think the court erred in granting the nonsuit, and that he should, instead, have submitted the question to the jury.

*Judgment reversed. All the Justices concurring.*

LUMPKIN, P. J., concurring specially. This is an important and interesting case. We all agree that the law of the main question involved is controlled by the decision of this court in *Head's* case, 79 *Ga.* 358. All the Justices of this court, except myself, are of the opinion that the doctrine there laid down is sound and should stand affirmed. This being so, I am, under our statute, bound by the decision in that case, and consequently am constrained to concur in the judgment now rendered. But I do not believe that decision is good law, and therefore think that the same should have been overruled. In that case this court held that although the purchaser of a railway excursion ticket had, by a special contract in writing, agreed that it should *not be good* for a return passage unless officially signed and dated in ink and duly stamped by a designated agent, the ticket *was good* for such return passage without being so signed, dated and stamped, if the purchaser had "in proper time and manner" done, or offered to do, all which was under the contract incumbent upon him in order to have the ticket made good for return passage in the manner indicated.

Of course, a refusal by the agent to validate the ticket, when it was his duty to do so, would constitute a breach of the contract between the company and the purchaser of the ticket, entitling the latter to damages; but I can not understand how

such a breach would give to the ticket a validity which the purchaser had himself agreed it should not have except upon the conditions prescribed in the contract.   It seems to me that, in holding the railway company bound to recognize and honor Head's ticket when it had not been validated, the court was, in effect, making for the parties a contract into which they themselves had never entered.   In the very nature of things, a railway company can not successfully transact a passenger business without requiring every person claiming the right to ride upon a train to produce to the conductor some sort of evidence showing the existence of such right.   Hence the ticket system.   There are many different kinds of tickets, and among them special contract tickets which may or may not, according to circumstances, be on their faces good for passage.   For instance, if the time limit upon such a ticket has expired, it is no longer valid; or if it is not stamped as required by the contract under which it was sold and purchased, it is apparently void, and therefore, in effect, really no ticket at all.   How, then, is a conductor to know when to honor and when to reject a paper tendered as a ticket, unless he is guided by what appears upon its face?   Manifestly, he must pass upon it just as it is presented.   " In all cases when the question as to the right of a passenger to travel arises between him and the conductor of a train, the ticket is necessarily the conclusive evidence of the nature and extent of the passenger's right.   No other rule, says Cooley, C. J., in Hufford v. Railway Co., 53 Mich. 118, 18 Am. & Eng. R. Cas. 336, can protect the conductor in the performance of his duties, or enable him to determine what he may or may not lawfully do in managing the train and collecting fares.   The public is interested in having the rules whereby conductors are to govern their actions certain and definite, so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger who, by accident or mistake, is without proper evidence of his right to a passage, though he has paid for it, it is better that he should submit to the temporary inconvenience than that the business of the road be interrupted, to the general an-

noyance of all who are upon the train. Pouilin *v.* Railroad Co., 52 Fed. Rep. 197; Railroad Co. *v.* Bennett, 50 Fed. Rep. 496; Townsend *v.* Railroad Co., 56 N. Y. 295." The above is taken from the opinion of Briscoe, J., in the case of Western Maryland R. Co. *v.* Stocksdale, 4 Am. & Eng. R. Cas. (N. S.) 510, wherein it was held that: "A railroad-ticket is conclusive as between the conductor and the passenger, if upon its face it does not entitle a passenger to a passage, even though the defect is due to a mistake of the ticket-agent; and the conductor may rightfully eject the passenger if he refuses to pay his fare upon demand." This case supports the position for which I am now contending, and is directly in point. The opinion in Pouilin *v.* Railroad Co., 52 Fed. Rep. 197, cited by Judge Briscoe, was delivered by Taft, J., who on page 199 cites numerous authorities in support of the following: "The law settled by the great weight of authority, and but recently declared in a case in this court (Railway Co. *v.* Bennett, 50 Fed. Rep. 496, 1 C. C. A. 544), is, that the face of the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the company. The reason for this is found in the impossibility of operating railways on any other principle, with a due regard to the convenience and safety of the rest of the traveling public, or the proper security of the company in collecting its fares. The conductor can not decide from the statement of the passenger what his verbal contract with the ticket-agent was, in the absence of the counter-evidence of the agent. To do so would take more time than a conductor can spare in the proper and safe discharge of his manifold and important duties, and it would render the company constantly subject to fraud, and consequent loss. The passenger must submit to the inconvenience of either paying his fare or ejection, and rely upon his remedy in damages against the company for the negligent mistake of the ticket-agent. There is some conflict among the authorities, but the great weight of them is in favor of the result here stated." And see 4 Elliott on Railroads, § 1594.

The following is from Hutchinson on Carriers (2d ed.), § 580 b: "Thus where, in consideration of a reduced rate, a

'round-trip' ticket is sold by which the passenger is to be conveyed to the point of destination and back, and the terms of the contract are that the ticket shall be good for the return trip only upon condition that the passenger will present himself to the ticket-agent at the point of destination, identify himself as the original purchaser and procure the ticket to be there stamped, or shall comply with other similar requirements, the validity of the ticket for the return passage depends upon his compliance with the contract, and in case he fails to comply he may be refused carriage and ejected from the car." As sustaining the text, the following cases are cited, all of which will be found more or less in point: Mosher v. Railroad Co., 127 U. S. 390; Boylan v. Railroad Co., 132 U. S. 146; *Moses* v. *Railroad Co.*, 73 *Ga.* 356; Bethea v. Railroad Co., 26 S. C. 91; Edwards v. Railway Co., 81 Mich. 364; Cloud v. Railway Co., 14 Mo. App. 136.

The following is extracted from Ray's Negl. of Imposed Duties (Pass. Car.), 511, 512: "A condition on a return excursion ticket sold at a reduced rate, that it shall not be good for the return trip unless stamped by the ticket-agent at the other end of the route, and again signed by the purchaser, is both reasonable and material; and a purchaser failing to comply therewith can not recover against the company on account of being ejected by the conductor, although he could, and offered to, otherwise identify himself as the original purchaser, or the conductor had certain knowledge of that fact." See the authorities cited in note 1 on the latter page. For other cases bearing upon the law relating to unstamped tickets, see 4 Rapalje & Mack's Dig. of Ry. Law, 184.

The argument that a railway company should be held liable in damages for the expulsion of a person who presented an invalid ticket, when the fact that it was not good was due to the company's fault, does not commend itself to me as sound. The purchaser, in such a case, is bound to know what his contract is, and is therefore chargeable with notice that his ticket will, or should be, rejected. Consequently, in attempting to ride upon it he invites expulsion, and thus places himself in the position of aggravating his damages,—a thing which, ac-

cording to the overwhelming weight of authority, is not allowable. But it is said the company ought to know, and does in law know, when a ticket should be honored. A railway company may have constructive notice of everything known to its various agents, but it by no means follows that each of its agents is aware of everything known to his master or to his fellow-agents. Pursued to its legitimate end, the line of argument above indicated would dispense with any necessity for tickets at all; for if every conductor is to be treated as knowing all that has occurred between a ticket-agent and the purchaser of a ticket, one proposing to ride on a railway-train could simply pay his fare to such agent, enter the train and take his seat. He would be under no duty of even informing the conductor of having paid the ticket-agent or disclosing his destination, for the conductor would (?) already have had full knowledge as to what had transpired between the ticket-agent and the person thus presenting himself as a passenger.

Our case of *Georgia Railroad Co.* v. *Dougherty*, 86 *Ga.* 744, certainly goes quite as far as any court should ever go in holding that a railroad company should be held liable in damages for ejecting from its train a person presenting a ticket upon which he was apparently not entitled to ride. There, the plaintiff had not entered into any special contract with the company, but had simply called for an ordinary ticket, and the agent had by mistake delivered to her "a wrong ticket," which she, relying upon the assumption that the agent understood his business, accepted without examination, being nearsighted and unable to read without her glasses, which she did not know whether she had with her on that occasion or not. This decision has not escaped criticism. In 9 Harvard Law Rev. 353, it was said: "The weight of authority is against it, and it seems to have no foundation in principle. It involves a misconception of the true character of a railroad-ticket." And see 42 Cent. L. J. 117. Even if the decision in *Dougherty's* case was right, however, it does not, in my judgment, support my brethren in adhering to the doctrine laid down in the *Head* case.

I will suggest a few illustrations showing the extent to which

that doctrine · might be carried. Suppose a railway company should sell a ticket, say from Atlanta to Savannah, with a contract on the ticket, signed by the company's agent and the purchaser, entitling the latter, upon his compliance with certain stipulations, to have delivered to him by another agent in Savannah a return ticket to Atlanta. If he fully performed his part of the contract, and the Savannah agent wrongfully refused to deliver to him the return ticket, he would nevertheless, simply by exhibiting to conductors the original contract and informing them of the facts, have the right to ride upon the company's trains from Savannah back to Atlanta.

Or, if a railway company contracted in writing with a person to do for it certain work at a point upon its line, agreeing in the contract that upon his completion of the work it would, through its agent at that point, furnish him with a ticket for his return home, he could, after due compliance with his undertaking and a demand upon the agent for the ticket, whether he received the same or not, insist upon being accepted by a conductor, or conductors, as a passenger entitled to ride.

It frequently happens that in acquiring a right of way through a tract of land, a railway company contracts to deliver to the owner a pass for life, or a term of years, over its road. If, after the completion of the line, it refused to deliver the pass, he could nevertheless demand of all conductors the right to travel upon the company's trains, and could maintain an action for damages for every expulsion therefrom.

It is unnecessary to multiply illustrations. These will suffice to show the extreme lengths to which, following the rule laid down in the *Head* case, the courts would be constrained to go, and also, I think, to prove that this rule ought to be repudiated.

There is another consideration which I wish to submit. The breach by a railway company of a special contract whereby it undertakes, in consideration of a reduced rate, to furnish a person with a ticket evidencing his right to ride upon a train, gives rise to an action ex contractu. It is by no means a case of tort; and yet the injured party, by attempting to ride without the ticket, becomes, under the doctrine which

this court has established, entitled to bring an action ex delicto for consequences arising from his own unwarranted effort to do a thing which he had no right to do. In the case of Southern Railway Co. v. McKenzie, decided by this court a few days after the judgment in the present case was rendered, it appeared beyond doubt that the plaintiff knew the document he presented as a return ticket would not be honored and that he would be expelled from the train unless he paid his fare; and yet a recovery far in excess of his actual damages was allowed to stand. I confess my inability to see upon what principle this man should have been permitted to convert a plain right of action for the breach of a civil contract into a case of tort. I could cite authorities almost without number, showing that this was wrong. I was, however, for the same reason as that stated at the beginning of this opinion, viz.: that the decision in the Head case, under our law, has the force of a statute until formally overruled, compelled to concur in the judgment rendered in McKenzie's case. The law is—or at least it used to be—that a distinction is to be observed between an executed contract and one which is merely executory. In other words, there is a difference between actually having a ticket and merely being possessed of a naked right, founded upon a special contract, to demand and receive one. Or, as was decided by this court in Weed v. Lindsay & Morgan, 88 Ga. 686, it is one thing to actually hold a lease upon realty, and quite another to be possessed simply of "a written contract for a lease for the term of ten years," which contract has been broken by a refusal of the landlord to comply with his undertaking to in fact deliver the lease called for therein.

I have, I trust, made it sufficiently plain that I am not in favor of exempting railway companies from the consequences of breaking their contracts; but lest I be misunderstood, I repeat here that they should be compelled to pay full and just compensation to any person who is put to loss or damage by reason of their failure to faithfully perform their undertakings, whether the same relate to tickets or to other matters. At the same time, I can not give my sanction to a judgment which I firmly believe is contrary to law.

In conclusion, I desire to say I am fully aware I have not discussed this case as it deserves. The overwhelming pressure of other official work has not left me the time requisite for this purpose. All the cases bearing upon every phase of the important question involved ought to be examined, closely studied and classified. Those which tend in the wrong direction should be pointed out and the fallacies in them exposed. To do this would, however, require much labor. I am not permitted to undertake it, and I find that many of my judicial brethren in other States are similarly embarrassed. An opportunity is presented for some jurist who has the time, the inclination and the industry, to make a most valuable contribution to the law.