## SOUTHERN RAILWAY CO. *v.* BARLOW (two cases).

1. A special contract upon a railway excursion ticket, signed by the purchaser and in one item stipulating that the ticket should not be valid for the returning trip unless signed by the purchaser in the presence of a designated agent and "also witnessed and officially executed by said agent for the returning trip," necessarily implied that it was incumbent upon the purchaser to use reasonable means of identifying himself as such to this agent.
2. Where in another item of such contract the purchaser agreed to sign his name and otherwise identify himself as the original purchaser of the ticket, "whenever called upon to do so by an agent or conductor" of the lines named on the ticket, *held*, that, construing the two items together, and taking into consideration the nature and purposes of the ticket, the word "agent" as used in the latter item was intended to embrace and refer to the validating agent mentioned in the former, and that consequently the purchaser, if so required, was under the duty of identifying himself to that agent otherwise than by signing his name.
3. One who enters a railway-train in possession of a ticket entitling him to ride thereon is, if he does so with the bona fide intention of using the ticket for the purpose of making the journey for which it is good, entitled

to recover whatever damages he may sustain by reason of a wrongful expulsion, although he may, before going upon the train, have had reason to believe the ticket would not be accepted for passage by the conductor thereon.

4. On the other hand, if one in possession of such a ticket enters a train, not for the purpose of making the journey called for by the ticket, but for the purpose of being put off, so as to make a case for damages against the railway company, he is, if ejected, entitled to nominal damages only. One of the defenses relied upon in the present cases being predicated upon this rule of the law, and there being evidence in support of the same, it was error to give in charge to the jury language which, in effect, entirely deprived the defendant of the benefit of this defense in case the jury believed its contentions of fact were well founded.

5. It was, in the trial of an action by a married woman against a railway company for an alleged wrongful expulsion from the defendant's train, erroneous to allow her counsel to comment to the jury upon evidence tending to show that a validating agent of the defendant had used insulting or offensive language to her husband when the latter went to that agent for the purpose of having his wife's ticket made good for passage, she not being present on that occasion.

Argued February 14, — Decided April 13, 1898.

Actions for damages. Before Judge Gober. Cobb superior court. November term, 1896.

*Dorsey, Brewster & Howell* and *Sanders McDaniel*, for the railroad company. *W. R. Hammond* and *L. P. Skeen*, contra.

FISH, J. On September 20, 1895, Joseph E. Barlow purchased from the Pennsylvania Railroad Company at Pittsburg, Pa., two tickets, one for himself, and one for his wife, for passage over connecting lines of railway from Pittsburg to Atlanta, Ga., and return, one of the lines being the Southern Railway between Atlanta and Chattanooga. Upon each of these tickets was a printed contract containing certain stipulations. Barlow signed his name to the contract on one of the tickets, and the name of his wife to the contract upon the other. The third item in each of the contracts was as follows: "This ticket will not be valid for the returning trip, unless signed by me in the presence of the authorized joint agent at Atlanta, Ga., also witnessed and officially executed by said agent for the returning trip." The eighth item in each contract was as follows: "I hereby agree to sign my name and otherwise identify myself as the original purchaser of this ticket, whenever

called upon to do so by an agent or conductor of the lines named thereon. I fully understand the terms upon which this ticket is issued, accept the same, and agree that it shall be forfeited unless I comply with all the conditions specified above." Barlow and his wife arrived safely in Atlanta, and on the day he reached that place, he went to the joint validating agent of all the railway companies whose lines centered in Atlanta, for the purpose of having the tickets of himself and his wife made good, in the manner indicated in the above-mentioned contracts, for their return to Pittsburg. He "signed both tickets." The agent, not being satisfied with the signatures, declined to stamp the tickets without further identification of Barlow as the original purchaser. The latter then procured the clerk of the hotel at which he had registered to go to the agent's office, and the clerk there expressed to the agent his opinion that the signature which Barlow had just placed upon his ticket was in the same handwriting as the signature which Barlow had placed upon the hotel register. Otherwise than as here stated, Barlow made no effort to identify himself as the original purchaser of these tickets. The agent still declined to stamp the tickets, and Barlow then announced his purpose to use them for passage nevertheless. It is inferable from the nature of the agent's reply that Barlow must thereby have been given to understand that the tickets would not be recognized by conductors as valid. According to Barlow, the agent, among other things, said: "The railroad company has got legal advice, and don't propose to be robbed by highway robbers and sharks." That night Barlow and his wife boarded a train of the Southern Railway, and upon his refusal to pay fare, both were ejected by the conductor. There was evidence tending to show that the lady was ill; indeed, threatened with a miscarriage, which fact was, of course, known to Barlow, but it does not appear that it was known to the conductor, or that in ejecting these persons from the train the conductor was guilty of any harsh, offensive, or unbecoming conduct.

Separate actions were brought against the company by Barlow and his wife, and at the trial thereof each obtained a verdict. The defendant filed in each case a motion for a new

trial, which was overruled, and it excepted. The evidence was substantially the same in each case. The plaintiffs showed the facts above set forth; and among other things there was, in behalf of the defendant, evidence tending to show that Barlow had no intention when he left Pittsburg of returning to that place, but that his purpose was, after reaching Atlanta, to proceed to Florida, and make his home in that State. It affirmatively appears that he did go to Florida, that he and his wife have since resided there, and that Pittsburg has never been his home since the time when they were expelled from the defendant's train. The following recital as to the material grounds relied upon by the defendant for a new trial in each of these cases may be treated as applicable to both. In Mrs. Barlow's case there was an additional ground which will be separately noticed.

1, 2. Complaint is made that in several portions of the charge the court assumed, or at least authorized the jury to assume, that Barlow, in presenting himself to the validating agent and signing the names of himself and his wife upon the contracts printed upon the tickets, did all that was essential to the validity of a demand that the agent should witness the signatures, and affix his stamp to the tickets, thus making them good for returning passage. All of us agree that the third item in the contract, which is quoted above, made it incumbent upon Barlow to use reasonable means of identifying himself to this agent as the original purchaser of these tickets; and we are of the opinion that this requirement was not met simply by writing the names of himself and wife and by having the hotel clerk to express the opinion that the signatures upon Barlow's ticket and upon the hotel register were in his opinion identical. The agent already had the benefit of a comparison of signatures, and the opinion of the clerk did not amount to anything of additional value as to this matter. All of us, except Mr. Justice Little, are also of the opinion that the third and eighth items of this contract should be construed together, and that, as a result, the contract as a whole should be held to mean that the purchaser of the ticket was expressly required to identify himself to the validating agent by means otherwise than

by merely signing his name. In other words, we are of the opinion that the word "agent," as used in the eighth item, was intended to embrace and refer to the validating agent mentioned in the third item, as well as any other agent of the company whose business or duty would require at his hands any action with reference to such ticket. It would seem that of all agents required to render service in this connection, the validating agent was the most important, because upon him, and him alone, devolved the duty of making the ticket good for a full half of the entire amount of travel for which it provided.

3. According to the decisions of this court in *Morse* v. *Southern Railway Company*, 102 *Ga.* 302, and *Southern Railway Company* v. *McKenzie*, 102 *Ga.* 313, following the ruling made in the case of *Head* v. *Georgia Pacific Railway Co.*, 79 *Ga.* 358, one holding the return portion of a railway excursion ticket, although the same has not been properly validated, is entitled to ride thereon, if the failure to validate was due to the fault of the railway company. It would seem to follow that a person holding such a ticket, and being entitled to ride thereon, would have the right to board a train, although he might know that the ticket would not be accepted for passage. One who has a perfect legal right to ride upon a ticket in his possession is not to be deterred from an attempt to exercise that right because he may have reason to believe that the railroad company will unlawfully disregard its contract. If, therefore, under such circumstances the passenger be unlawfully ejected from a railway-train, he may recover all damages which he may show by evidence he is entitled to receive. Some of the charges of the court complained of were not in accord with what has just been said, and were therefore erroneous. We do not, however, wish to be understood as holding that in the present case it appeared that Barlow and his wife were entitled to ride upon the tickets which he held. We have already expressed above the views we entertain as to the law applicable to this question.

4. One of the defenses relied upon in the present cases was predicated upon a contention by the defendant, that Barlow really had no bona fide intention of returning to Pittsburg on the day when he and his wife took the train from which they

were expelled, but that his purpose in entering the train was to have himself and wife ejected therefrom, and thus make cases against the railway company for damages. The authorities everywhere support the proposition that a person can not do a thing of this kind, and then recover exemplary damages. It is the duty of every person who has been injured not to take steps for the mere purpose of aggravating his damages; for in so doing he himself invites additional wrongs or injuries, and consequently ought not afterwards to be allowed to complain of the same. In this connection, in Barlow's case, the court charged in substance as follows: It did not matter what business the plaintiff was engaged in at Pittsburg, or how long he stayed in Atlanta, so far as the railway company's interest in him was concerned; it was the business of the company to transport passengers, and if the plaintiff had a right to be carried by this ticket, the railway company had no further concern with reference to it. In Mrs. Barlow's case the charge in this connection was in the following language: "There has been something said here about this woman living in Pittsburg and going to Florida. Well, the only interest the railroad company has got in this is to have her comply with her contract; they have that right; and she has a right to have them comply with theirs. She has a right to live in Pittsburg or in Florida, just as she sees proper. That is nobody's business but hers; and when she goes to Atlanta, if she did go there, she has a right to go back, if this ticket allowed it, on the same day she got there. That is another matter to be determined by herself." We think the effect of these charges was to deprive the defendant of the benefit of its contention that Barlow, in taking the train, had no bona fide purpose of returning to Pittsburg, but that his object simply was to have himself and wife ejected, and thus lay the foundation for bringing the present actions. Of course, it was the right of Barlow and his wife to reside where they pleased, or to go to any place they chose to visit; but taking into consideration all the facts and circumstances of these cases, it was certainly the right of the defendant to insist upon its above-stated contention. We are not ourselves intending to express any opinion as to the merits

of this particular matter of controversy, but we think the determination of the same should be left to the jury under instructions giving to each side a fair opportunity to have the evidence offered in favor of that side weighed and passed upon without prejudice.

5. In the motion filed by the company in Mrs. Barlow's case, complaint is made that the court, over the defendant's objection, allowed her counsel to comment upon the alleged insult which the validating agent had given to her husband. Counsel was referring to testimony on the part of Barlow in which he swore that the validating agent had used to him the offensive language quoted in the preliminary statement preceding this discussion. We are quite sure the court ought to have required counsel to desist from making such an argument. It could have no possible legal relevancy in the trial of Mrs. Barlow's case, and the only effect it could have had was to inflame and prejudice the jury, and tend to induce them to find in her favor an amount larger than they would otherwise have allowed. After a thorough and careful examination of the records in both of these cases, our conclusion is that the ends of justice require a new trial in each.

*Judgment in each case reversed. All the Justices concurring, except Cobb, J., absent.*