[*Civ. No. 100.     Second Appellate District.—December 21, 1905.*]

PERRY     BRIGHAM,     Respondent,     v.     SOUTHERN
PACIFIC COMPANY, Appellant.

RAILROAD TICKET—IDENTIFICATION OF PASSENGER—EJECTION—EVI-DENCE—TRAIN AGENT'S KNOWLEDGE OF ATTEMPTED SALE.—In an action to recover damages for wrongful ejection from a railroad train of a passenger who held a ticket from New York to Los Angeles and return, in consideration of the reduced price of which he had agreed that he must identify himself as the original purchaser to the satisfaction of any conductor or agent, else the ticket should be void, evidence that the train agent, who, not being satisfied of his identity on the return trip, ejected him from the train, knew that the ticket had been exhibited for sale at the office of a ticket scalper in Los Angeles, was admissible as tending to show that the train agent acted reasonably in the premises, and to show that the passenger had acted in bad faith in trying to sell the ticket, and as tending to mitigate the damages which plaintiff was entitled to recover, if the jury were satisfied he was entitled to recover anything.

ID.—BURDEN OF PROOF—SATISFACTION OF REASONABLE MAN—QUESTION OF FACT FOR JURY—PROOF.—The burden was upon the plaintiff to show that he complied with his contract by furnishing such proof of his identity as would satisfy a reasonable man, and it being a question of fact for the jury to determine as to what was reasonable, it should have been put in possession of all of the facts upon which the train agent acted in requiring further identification of the plaintiff on his departure from the train.

ID.—MEANING OF CONTRACT—REASONABLE EVIDENCE OF IDENTITY—REFUSAL OF INSTRUCTIONS.—The true meaning of the contract requiring plaintiff to prove his identity to the satisfaction of the train agent is that it was his duty only to give such reasonable evidence of his identity within his reach as ought to satisfy a reasonable man honestly seeking to do justice between the company and the passengers; and requested instructions, without qualifications to the effect that it was the duty of the plaintiff to identify himself to the satisfaction of the train agent, were properly refused.

APPEAL from an order of the Superior Court of Los Angeles County, refusing a new trial.  Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, for Appellant.

Powers & Holland, for Respondent.

GRAY, P. J.—The plaintiff had a verdict for damages in the sum of $2,000 for having been wrongfully ejected from defendant's train. On defendant's motion for a new trial, the damages were reduced to $1,000, and on acceptance by plaintiff the new trial was denied. The appeal is by defendant from the order denying a new trial.

The plaintiff in his complaint says that for a long time prior to his injury he had been engaged in mining, mercantile, and brokerage business. From his testimony it appears that he was a "traveling man" by occupation, and had, a little less than three months previous to his alleged injury, purchased in New York a first-class round-trip ticket from that point to San Francisco and Los Angeles and return; that he had come out here on that ticket, and on his way had worked the towns from Salt Lake City to San Francisco and down to Los Angeles, "working up trade for a friend of his in iron beds, and establishing agencies for their manufacture on the Western coast." He had been in Los Angeles some six days, and during that time, according to his own testimony, he had appeared at one or two ticket broker agencies and inquired what unused tickets were selling at, with a view of possibly selling the ticket upon which he was riding at the time he was ejected from the train. Witnesses of the defendant testified that a man other than the plaintiff had brought the ticket in question to the ticket broker's office twice, once before it was validated and again after it was validated. One of these witnesses was the ticket broker himself, and his testimony was very positive to the point that it was the same ticket and that the man who offered it for sale each time was not the plaintiff. He did not sell the ticket, however, and on the twenty-third day of September, 1902, plaintiff boarded an overland train of defendant with said ticket in his possession, intending to go east thereon, as he says, to accept a position with a business concern in Boston, Massachusetts, at $35 per week. At that time plaintiff was about fifty-seven years of age, was recovering from a recent illness, and had been an invalid for twenty years immediately

previous thereto. Soon after the train left Los Angeles the plaintiff encountered the train agent, named M. E. Clute, who demanded his ticket and received into his hands the ticket in question. The train agent, having, as he says, "a bulletin of a ticket of Perry Brigham" (the plaintiff's name), at once set to work to ascertain whether the plaintiff was the original purchaser of the ticket. The plaintiff, in consideration of the reduced rate at which the ticket was sold, had signed an agreement indorsed upon the ticket, as follows: "The holder will identify himself or herself as the original purchaser of this ticket by writing his name or by other means if necessary, when required by conductors or agent." He had also agreed that, "unless all the conditions of this ticket are fully complied with, it shall be void." He also signed the following: "To prevent imposition, the holder must identify himself as the original purchaser of this ticket to the satisfaction of any conductor or agent, by signature and otherwise, whenever requested." Under this agreement the plaintiff was called upon by the agent to write his name upon a pad, with which request he seems to have complied cheerfully and so wrote his name twice. The agent seemed not satisfied with these signatures and proceeded to ask plaintiff if he knew anyone on the train, to which a negative reply was given. Some other questions followed, which are not specifically stated in plaintiff's evidence, and then the agent asked the plaintiff whether he crossed the Missouri river at Omaha or St. Louis on his way out here. To this the plaintiff replied that he did not know, as he was asleep at the time. The agent thereupon told the plaintiff that the ticket was not his, and directed plaintiff to pay his fare or get off at the next station. Afterwards, on arrival at Burbank, some eleven miles out of Los Angeles, at 1 P. M., by the threats of the conductor, to forcibly eject him, the plaintiff was induced to leave the train, the conductor carrying his baggage and placing it near the depot. The plaintiff then stated to the depot agent that he had been put off the train, and asked about when he could get a train back to Los Angeles, and also where he could get something to eat. The agent advised him as to these matters, and he then went to a restaurant and procured and consumed some crackers and a bottle of beer. Some time after he alighted from the train—the evidence being conflict-

ing as to the exact time, but between thirty minutes and three hours thereafter—the plaintiff was approached by the station agent with a statement that the latter had been in communication with the train agent who had taken up the ticket, and the train agent desired plaintiff to remain at Burbank until he should return there on his way to Los Angeles (the time of his return being between 7 and 8 o'clock that same afternoon), and that Clute, the said train agent, said he wanted to see the plaintiff very much, and it would cost plaintiff nothing to go with him back to Los Angeles, and if Mr. Clute had made a mistake he would like to talk with plaintiff about it; would like to interview him, see him personally, etc. The plaintiff in response to this said he was sick and did not want to talk with Mr. Clute because of the previous ill-treatment received at his hands.

The train agent testifies concerning his attempt on the train to identify the plaintiff as follows: ''When the ticket was presented to me for passage, I asked the gentleman for his signature, after looking at the ticket. He made the signature once and it—I didn't think it compared favorably with that on the ticket. Taking all precautions I asked him to make it again, which he did. I then asked him a few questions about the ticket, and then asked him if he could identify himself in any way; if he had anything with him to identify himself. And all the answer I could get from him, he says, 'That is my ticket.' He repeated it several times. But I says, 'Have you anything by which you can identify yourself?' 'Well,' he says, 'that is my ticket.' I then asked him if he was known in Los Angeles. He says, 'I am.' I said, 'Then you can identify yourself there?' He said, 'I could.' 'Well,' I says, 'the best way for you to do, if you don't care to go through, you can do two things: You can pay your fare, taking a receipt from the conductor, and afterward, if you can satisfy the company that you are the original purchaser of this ticket, they will refund you your money. If not, get off at Burbank. I will return here on the Santa Barbara local, and I will take you into Los Angeles. It will cost you nothing. I will keep the ticket, and if you can satisfy me that you are the original purchaser, I will return the ticket at Los Angeles, and you can get right out of there.' To that he said nothing more than to make the remark again, 'That is my ticket.' I

went on working through the train. Then I went back and notified Mr. Bodman.'' At about 7 o'clock in the afternoon plaintiff boarded one of defendant's passenger cars attached to a freight train and returned to Los Angeles, and a few days later commenced this suit.

Among other contentions of appellant it urges that the court erred to its prejudice in refusing to allow it to prove that Clute, the train agent, at the time he was investigating the question of plaintiff's identity, had knowledge of the fact that the ticket in question had been exhibited for sale at the office of a ticket scalper. For some reason, possibly because he thought it a matter of no importance, the respondent makes no direct reply to this contention. I think this matter deserves attention. The plaintiff had agreed to identify himself to the reasonable satisfaction of the train agent. He had also agreed that if he did not comply with this agreement his ticket should be void. His right to remain upon the train depended as much upon the performance of the contract as it did upon his having the necessary ticket. Plaintiff had, in a way, made the train agent the judge of the question of his identity; and if by his own negligence or willful and wrongful acts he had led the train agent to believe that he was not the original purchaser of the ticket, he could not be heard to complain. Of course, the train agent must proceed reasonably in the premises, and should not eject plaintiff from the train unless the facts before him were sufficient to satisfy a reasonable man, seeking to do justice between the railroad company and its patrons, that the plaintiff was not the original purchaser of the ticket. The burden is on the plaintiff to show that he complied with his contract. (*Central of Georgia Ry. Co.* v. *Cannon,* 106 Ga. 828, [32 S. E. 874].) ''The ticket holder must furnish such proof of his identity as would satisfy a reasonable man.'' (*Morse* v. *Southern Ry. Co.,* 102 Ga. 302, [29 S. E. 865].) This being the rule, and it also being a question of fact for the jury to decide as to what was reasonable, we think the jury should have been put in possession of all the facts upon which the train agent acted in requiring plaintiff to further identify himself, pay fare, or leave the train. How are the jury to determine the reasonableness of the agent's conduct, unless they knew all the evidence which he had received tending to show that the

ticket was not in the hands of the original purchaser? The fact that the ticket had been offered for sale to a scalper would be some evidence to the mind of the agent that the original purchaser had no further use for it, and the fact that there were so many places in Los Angeles where these tickets are treated as articles of merchandise would naturally lead him to think that the effort to sell had probably met with success; and if the evidence had been admitted, showing that he knew that this ticket had been offered for sale, it is possible that the jury might, by adding this circumstance to the fact that plaintiff was riding in a day coach to New York, and that he could not or would not tell the agent whether he came out on the ticket by way of St. Louis or Omaha, and would give no satisfactory answer to that question, have reached the conclusion that the conduct of the agent, as described in his own testimony, was justified on the ground that he had good reason to believe that plaintiff was not the original purchaser of the ticket. It seems to have been conceded at the trial by all parties that it was proper to show that the ticket had been offered for sale; but of what benefit to defendant's theory of the case was it? What defense did this tend to establish, unless it was also shown that this fact had been brought to the knowledge of the train agent? Defendant's defense rested largely upon the reasonableness of this agent's decision. How could it be argued that a fact about which the agent knew nothing could throw any light upon that question? It is difficult to understand how any man of reasonable intelligence can travel across the continent and not know whether he passed through St. Louis or Omaha. Of course, it was for the jury to determine what was the reasonable identification, as well as whether the agent acted reasonably under the circumstances, and we do not mean to here interfere with that important function; but no material fact bearing upon that question should have been excluded from the jury. We think that the agent's knowledge of the conceded fact that an effort had been made looking to the sale of this ticket should have been admitted in evidence.

There is another way in which this matter was pertinent to the case. It was an act of bad faith, as being in violation of contract, and a wrongful act toward defendant, to even

try to sell this ticket. The plaintiff had agreed that it was not transferable. If, then, plaintiff's wrongful efforts in this behalf had any weight with the agent in determining that plaintiff was not the rightful holder of this ticket, to that extent at least the plaintiff was the victim of his own wrongful act, for which he could not be heard to complain. Unless it were shown that the agent had this knowledge, the jury could not consider the fact in this material connection. In other words, we think the excluded evidence should have been received in mitigation of damages, or as bearing upon the question as to what amount of damages the plaintiff was entitled to recover in case it were determined by the jury that he was entitled to recover anything. The excessive verdict may be attributed to this erroneous ruling.

Complaint is made of the refusal of the court to give certain instructions offered to the effect that it was the duty of plaintiff to identify himself to the satisfaction of the train agent. We think these instructions were properly refused. To be sure, the plaintiff did agree to satisfy the agent as to his identity; but this must be taken to mean only that he would give such reasonable evidence of his identity within his reach as ought to satisfy a reasonable man, honestly seeking to do justice between the company and the passenger. This is what the cases seem to hold, and is as far as they go. An instruction following literally the language of the contract might be misunderstood by the jury. (*Central of Georgia Ry. Co.* v. *Cannon*, 106 Ga. 828, [32 S. E. 874]). As the other points urged by appellants are not likely to arise upon a new trial of the case, we deem it unnecessary to further extend this opinion.

The order appealed from is reversed, and the case remanded for a new trial.

Allen, J., concurred.

Smith, J., concurred in the judgment, on the ground last stated in the opinion.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1906.