HEAD *vs.* THE GEORGIA PACIFIC RAILWAY COMPANY.

1. An action on the case by a passenger against a railway company for wrongfully expelling him from the train with force and violence, though the declaration allege a contract for carriage, is not for breach of the contract, but for a tort by breach of duty, and punitive as well as actual damages are recoverable if the circumstances of the particular case warrant such recovery.

2. If the purchaser of a round-trip ticket, after paying for and receiving it, perform all of the stipulations of the contract on his part, or offer to do so in proper time and manner, the company is bound to recognize and honor the ticket when and wherever duly presented, notwithstanding any mistake or omission by its agents in signing or stamping the same.

December 20, 1887.

Actions. Contracts. Torts. Damages. Railroads. Negligence. Before Judge MADDOX. Haralson Superior Court. July Term, 1887.

The material allegations of the plaintiff's declaration were as follows: On May 18, 1885, he contracted with defendant, through its agent, Howell, at Tallapoosa, Georgia, to be carried and returned from that town to New Orleans, Louisiana, paying the agent $15 and receiving a round-trip ticket. Owing to some mistake in signing and stamping this ticket by the agent, return passage on it was refused by defendant's agents. Plaintiff complied with every part of his agreement, and the irregularity in the ticket was entirely due to the wrongful conduct of the agent at Talla-

poosa. When return passage was refused, plaintiff used another ticket which he had procured at great trouble and expense ($30), and was carried on it to Birmingham, Alabama, and there surrendered, the contract named therein being fully performed. He was still 150 miles from Tallapoosa. He presented the first named ticket to the conductor of defendant's train, who refused to take it, notwithstanding plaintiff's statement that its irregularity was through the fault of the agent at Tallapoosa, and stopped the train and forcibly ejected plaintiff, who acted in a gentlemanly manner. This was in the afternoon of May 23, 1885, about two miles from Birmingham. Plaintiff was damaged $200 in being delayed for two days in reaching his home, his business there needing his personal attention; and had to pay $40 for board and traveling expenses in reaching Tallapoosa. On both occasions when return passage was refused, the cars were filled with passengers, and plaintiff was greatly troubled and his feelings injured by the forcible expulsion and rejection of ticket, to his damage in the sum of $10,000.

The defendant demurred to so much of the declaration as set up a claim for general or punitive damages, to meet which objection the plaintiff offered this amendment:

" Said ticket was signed and stamped by said Howell, and was a proper and legal ticket; but the agents and servants of said defendant company claimed that there was some irregularity in the signing and stamping, and for that reason refused to allow plaintiff to ride upon the same, and threatened to eject him from their cars on his return home to Tallapoosa from New Orleans, and actually did eject him from their said train, plaintiff then and there alleging that it was a proper and legal ticket."

This amendment was dissallowed and the demurrer sustained. The decision sets out the evidence. The court charged the jury that the plaintiff could only recover his actual damages; and the jury found for him $7 and costs. He excepted to each of the rulings indicated.

HEAD & THOMAS; M. J. HEAD; BLANCE & NOYES, for plaintiff in error.

J. M. McBRIDE, for defendant.

BLECKLEY, Chief Justice.

The amendment proposed did not substantially strengthen the case set out in the original declaration, and while it was not an improper amendment, the court perhaps ought not to be reversed for disallowing it. But we think it was error to cut off the plaintiff from the recovery of such damages of every kind as he sustained. His declaration was not in contract, but in tort; it was an action upon the case for a wrong, not an action of *assumpsit* for the breach of a contract. It went upon the theory that the contract established the relation of carrier and passenger, a relation attended with a duty from the former to the latter, and that the duty was wrongfully violated. Where the plaintiff has a contract with the defendant which generates a relation attended with a public duty, he has his option to bring *assumpsit* for breach of the contract, or case for breach of the duty. Here the plaintiff brought a proper action, the contract being set out merely as inducement, with a view to raise the relation, the stress of the action being put upon his expulsion from the train, which, if wrongful, was not only a breach of the contract, but a violation of a public duty by a common carrier. The court erred in sustaining the demurrer and ordering the action to proceed for the recovery of actual damages only: actual damages in the sense in which the phrase has now come to be used frequently in Georgia, a sense supposed to exclude damages for wounded feelings, though sections 3066 and 3067 of the code, properly construed, do not require so restricted an interpretation. Wounding a man's feelings is as much actual damage as breaking his limbs. The difference is, that one is internal and the other external, one mental, the other physical, in either case the damage is not measurable with exactness. There can be a closer approximation in estimating the damage to a limb than to

the feelings, but at the last the amount is indefinite. The jury would have a much wider discretion in dealing with feelings than with an external injury. At common law, compensatory damages include, upon principle, and I think upon authority, salve for wounded feelings, and our code has no purpose to deny such damages where the common law allowed them. And suppose we call the damages punitive, they are recoverable in such a tort as this if the circumstances were aggravated either in the act or the intention. *Georgia Railroad vs. Olds,* 77 *Ga.* 674. Putting a man off a train wrongfully is a high-handed measure. In the court below, by sustaining the demurrer, it was meant to exclude recovery for everything except special damages—damages that could be accurately proved and estimated. And the way the jury measured damages so as to get $7.00 under the evidence was, they allowed $2.00 a day for the lost time, making $4.00, and $3.00 for railroad fare, which the plaintiff paid to get back to Tallapoosa; so the jury found only special damage, the damage actually proved in a special case. They found no general damages at all.

Looking into the evidence, we find that this passenger purchased a ticket at Tallapoosa, which was to this effect: Special contract. Good for one first-class passage to New Orleans and return when officially stamped and dated on back hereof and presented with coupons attached. In consideration of reduced rate the passenger agrees: (1) Company not responsible beyond its own line, only agent for other lines; (2) ticket not transferable; (3) any alteration of the ticket renders it void; (4) ticket not good for outward passage, except within ten days from date of sale as stamped on back and written below; (5) not good for return passage unless holder identifies himself as original purchaser to satisfaction of authorized agent of Queen & Crescent Route at New Orleans, within ten days from date of sale; and when officially signed and dated in ink and duly stamped by said agent, then good only

within ten days from such date (which date perhaps means the date of stamping, but at all events, in this case the date of return was within ten days of the date of issuance); (6) limited liability for baggage; (7) coupons not receivable if detached; (8) the passenger's signature to be manuscript and in ink; (9) ticket void unless all the conditions complied with; (10) no line to be answerable for damages for any statement in accordance with the contract made by any employé of said line. I conjecture there was an omission of the word not—"any statment not in accordance with the contract," etc. Some question might arise as to inconsistent statement, but where consistent, it looks as if it would be idle to protect the company against it; (11) that no agent or employé has power to alter or modify any of the conditions; (12) the passenger to sign his name and otherwise identify himself whenever called upon to do so by the conductor or agent of the line or lines, failure to do which renders the ticket void. These are the twelve conditions that the passenger subscribes to and agrees to be bound by. The declaration alleges that he performed them all on his part, and he so testifies in his evidence. Then the ticket is dated, signed by the passenger and by an attesting witness, and signed by the general freight and passenger agent. On the reverse side is the following : " Agent of Georgia Pacific Railway Company will stamp in space below on the left of the page. Agent of Queen & Crescent Route will stamp in space below on the right of the page." And there is a scroll on each margin for the stamp. "In compliance with my contract with the Georgia Pacific Railway Company and lines over which this ticket reads, I hereby subscribe my name as the original purchaser of this ticket"; signed by the passenger and attested officially by the agent who sold the ticket, and dated on the day of sale ; stamped on the right margin instead of the left.

There appears, in the execution of this ticket, to be two irregularities : first, the stamp is on the wrong margin;

and secondly, one signature of the passenger is made at the wrong place. He signed twice when he bought the ticket—once in the right place for the selling station, and then again at the place where he should have signed in New Orleans this signature that should have been made at New Orleans was made at the time and place of sale, Tallapoosa, and was attested by the very agent who sold the ticket, and dated there by him apparently. The passenger testified that at New Orleans he went to the proper agent to have the ticket stamped and signed in accordance with the contract; that he identified himself; that he urged upon the agent to recognize him and to recognize the ticket; that the agent declined to do it, but referred him to another officer, which officer stated that he sometimes for ladies had done such a thing, but he was not going to do it any more, so he declined. The effort— a persistent effort—made in New Orleans to have this contract complied with on the part of the designated agent failed. The passenger got upon the train to return, and they threatened him with expulsion, but he procured a ticket from a friend that brought him regularly as far as Meridian, Mississippi. There his new ticket exhausted itself, and he passed on to Birmingham without question. In going from Meridian to Birmingham he had no trouble. When he reached Birmingham, he was then again at the line of the company that sold him the ticket, and he got upon its train, and when about two miles out, he offered it to the conductor to pay his fare; the conductor examined it and refused to recognize it, and expelled him from the train. Such is the evidence. He took measures then to get home. He seems to have done all that his contract required of him, and failure in correctness was on the part of this company's agent in the first instance, and of the agent designated by this company to act for it in New Orleans in the next instance. So we think that the plaintiff could recover in this action his proper damages of all sorts. Why not? The only excuse that can be rendered is, that

the company's business was managed by itself (because management by its agents is management by itself) in a way that it would not recognize its own ticket. The company was as much represented by the agent who sold the ticket as if it had been a natural person who in person had represented himself. And so of the agent in New Orleans. It was as much represented by the conductor who rejected the ticket and expelled this man from the train as if it had been a natural person and had been there present, and had in person ejected him. Then where is the difficulty in holding it liable? It is very proper to have rules and regulations amongst agents and employés, by which they can conduct business orderly and correctly, but failure to do it correctly, intelligibly and conformably to instructions is as much the fault of the company as it is the fault of the agent. The company can no more be heard to say that an error was committed by its agent, resulting in a breach of duty on its part to the plaintiff, than it can be heard to say that an error was committed by its own action. The agent's action is as binding upon it, within his sphere of power and duty, as is the action of the president or the board of directors within theirs. This agent that stamped the ticket wrong and attested a signature by the passenger out of time and place was acting in the line of his duty, and the plaintiff testifies that he believed in good faith that he understood his duty, and that he signed the ticket exactly where the agent pointed out for him to sign. He had a right to assume that all these agents understood their duties and would perform them; and if he performed his, he could stand upon his contract, and upon his relation as passenger which the contract generated. Now, if he had omitted his duty, as was the case with the party in *Moses vs. East Tenn., Va. & Ga. R. R.*, 73 *Ga.* 356, where the passenger failed to go and get his ticket stamped, he would have had no case. There the passenger had no right to a return carriage; he was in default, but here this plaintiff has done his duty, his whole duty, and that being so, he is

in the same attitude as a passenger where no mistake or irregularity has been committed. Whether we take the declaration or the evidence, or both, there ought to have been a recovery by the plaintiff for all sorts of damage that he sustained—all sorts that the jury thought proper to award.

Judgment reversed.