**MISENHEIMER v. BURRIS**

[360 N.C. 620 (2006)]

DONALD EUGENE MISENHEIMER v. JAMES CLAYTON BURRIS AND
RANDALL BURRIS

No. 245A05

(Filed 17 November 2006)

**Criminal Conversation— statute of limitations—tolling by discovery rule**

The discovery rule of N.C.G.S. § 1-52(16) applies to actions for criminal conversation. Therefore, the three-year statute of limitations for criminal conversation set forth in N.C.G.S. § 1-52(5) is tolled by N.C.G.S. § 1-52(16) and begins to run only when the extramarital affair is discovered or should have been discovered by the aggrieved party, not upon the completion of the last act constituting the tort. However, an action for criminal conversation remains subject to the ten-year statute of repose provision in N.C.G.S. § 1-52(16).

Chief Justice PARKER dissenting.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 169 N.C. App. 539, 610 S.E.2d 271 (2005), reversing a judgment entered 20 May 2003 by Judge Michael E. Beale in Superior Court, Stanly County. On 6 October 2005, the Supreme Court allowed defendant's petition for a writ of certiorari to review additional issues not addressed by the Court of Appeals. Heard in the Supreme Court 13 February 2006.

*Walker & Bullard, P.A., by Daniel S. Bullard and James F. Walker, for plaintiff-appellant/appellee.*

*Tucker & Singletary, P.A., by William C. Tucker, for defendant-appellee/appellant.*

BRADY, Justice.

The question presented is an issue of first impression: Whether, in an action for criminal conversation, the applicable statute of limitations is tolled until discovery of the extramarital affair by the aggrieved party. Because we hold that the discovery rule of N.C.G.S. § 1-52(16) applies to actions for criminal conversation, we reverse the Court of Appeals.

## FACTUAL BACKGROUND

Donald Eugene Misenheimer (plaintiff) and his wife, Rebecca Misenheimer (Mrs. Misenheimer) were married in February 1971. Plaintiff met James Clayton Burris (defendant) in the 1970s. Defendant frequented plaintiff's automotive and equipment repair shop located on the property with the Misenheimer family home, and the two became friends. Defendant began working for plaintiff in the mid-1980s and was at the Misenheimers' home working or visiting five to ten times per week through the early 1990s. Their families also grew close, going on trips together and visiting each other frequently.

Unbeknownst to plaintiff, Mrs. Misenheimer and defendant began an extramarital affair in 1991, which did not end until 1994 or 1995. During 1995 and 1996, plaintiff and defendant had a business dispute that damaged their relationship, although they continued to have contact with each other. In February of 1996, Mrs. Misenheimer informed plaintiff that she wanted a divorce. Plaintiff and Mrs. Misenheimer received counseling through their church to no avail, and in early 1997 Mrs. Misenheimer communicated to plaintiff that she still wished to separate.

Plaintiff was uncertain whether any type of romantic or sexual relationship existed between defendant and Mrs. Misenheimer. In October 1996, plaintiff confronted defendant about any possible sexual activity with Mrs. Misenheimer. Plaintiff believed defendant's statement that "[he] may have done some things that [he] shouldn't have, but [he] didn't sleep with [Mrs. Misenheimer]." Finally, on 15 March 1997, Mrs. Misenheimer separated from plaintiff by leaving the family home.

Plaintiff first confirmed defendant's extramarital affair with Mrs. Misenheimer in July of 1997 during a marital counseling session. Immediately after this session, Mrs. Misenheimer acknowledged that she and defendant engaged in "an affair of the hands and the heart." The Misenheimers' divorce was final in early 2000, and plaintiff filed an action for criminal conversation on 12 April 2000, within three years of his discovery of the affair.

The matter came on for hearing, and after the close of plaintiff's evidence the trial court denied defendant's motion to dismiss the criminal conversation claim, finding that the discovery rule codified in N.C.G.S. § 1-52(16) applies to criminal conversation actions. At the close of all evidence, the trial court instructed the jury that the bur-

MISENHEIMER v. BURRIS

[360 N.C. 620 (2006)]

den of proof was on the plaintiff to satisfy the jury, by the greater weight of the evidence, that he brought the action before the expiration of the three year statute of limitations. With regard to application of the discovery rule codified in N.C.G.S. § 1-52(16), the trial court instructed the jury that the statute of limitations is tolled until harm to the claimant becomes apparent or reasonably should have become apparent. The jury returned a verdict finding defendant engaged in criminal conversation with Mrs. Misenheimer and that plaintiff's action was commenced within the statute of limitations. The jury awarded plaintiff $100,001 in actual damages and $250,000 in punitive damages, and the trial court entered judgment consistent with that verdict.

Defendant appealed this judgment to the Court of Appeals, arguing, *inter alia*, that the trial court committed reversible error in ruling that the statutory discovery rule of N.C.G.S. § 1-52(16) applies to actions for criminal conversation. In a divided decision, the Court of Appeals agreed with defendant, reversed the trial court's order denying him a directed verdict, and remanded the case to the trial court. On 10 May 2005, plaintiff filed his appeal of right to this Court based upon the dissenting opinion. On 6 October 2005, this Court allowed defendant's petition for writ of certiorari to consider additional issues not addressed by the Court of Appeals.

## ANALYSIS

The pertinent statute of limitations provides that a plaintiff must file an action within three years "[f]or criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." N.C.G.S. § 1-52(5) (2005). N.C.G.S. § 1-52(16) establishes what is commonly referred to as the discovery rule, which tolls the running of the statute of limitations for torts resulting in certain latent injuries. The discovery rule provides that:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

*Id.* § 1-52(16) (2005).

## MISENHEIMER v. BURRIS

[360 N.C. 620 (2006)]

In construing this statutory language, we are guided by long-standing rules of statutory interpretation. First, if a statute is clear and unambiguous, no construction of the legislative intent is required and the words are applied in their normal and usual meaning. *See Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citing *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). "However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Diaz*, 360 N.C. at 387, 628 S.E.2d at 3 (citing *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) ("The best indicia of [legislative] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.")). Additionally, if a statute is remedial in nature, seeking to "advance the remedy and repress the evil" it must be liberally construed to effectuate the intent of the legislature. *DiDonato v. Wortman*, 320 N.C. 423, 430 n.2, 358 S.E.2d 489, 493 n.2 (1987) (internal quotation marks omitted).

We find N.C.G.S. § 1-52(16) to be ambiguous on its face. The statute provides a discovery rule for actions in "personal injury." The term personal injury has a wide range of meanings. In the context of the statute in question, personal injury could be defined as either: "[A]ny harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury," or "[a]ny invasion of a personal right, including mental suffering and false imprisonment." *Black's Law Dictionary* 802 (8th ed. 2004). The statute is ambiguous as to what is intended by the use of the words "personal injury." Certainly an action for criminal conversation falls under the latter definition of personal injury as it concerns an invasion of a individual's personal right. Similarly, in many cases the first definition of personal injury could be applicable to claims of criminal conversation as "the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter." *Young v. W. Union Tel. Co.*, 107 N.C. 287, 297, 107 N.C. 370, 385, 11 S.E. 1044, 1048 (1890) (internal quotation marks omitted). The language and the spirit of the statute suggest the legislature intended to allow an otherwise qualified plaintiff to recover damages after the normal expiration of the statute of limitations if the injury was latent. We also find this statute to be remedial in nature and will construe it liberally to give effect to that intent. Although we hold that the discovery rule tolls the statute of limitations in cases of criminal conversation, we observe that such actions remain subject to the statute of repose provision in N.C.G.S.

§ 1-52(16), which states that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action."

Defendant argues that plaintiff should have been required to show severe emotional distress before the discovery rule was applied to his action. We find nothing in our case law or any other authority cited by defendant that mandates such a holding. Nevertheless, while severe emotional distress is not an element of criminal conversation, damages for mental anguish are recoverable in cases of criminal conversation. *See Cottle v. Johnson*, 179 N.C. 426, 429, 102 S.E. 769, 770 (1920). " 'Wounding a man's feelings is as much actual damages as breaking his limb. The difference is that one is internal and the other external; one mental, the other physical. At common law compensatory damages include, upon principle, and . . . upon authority, salve for wounded feelings . . . .' " *Carmichael v. S. Bell Tel. and Tel. Co.*, 157 N.C. 17, 20-21, 157 N.C. 21, 25, 72 S.E. 619, 621 (1911) (quoting *Head v. Ga. Pac. Ry. Co.*, 79 Ga. 358, 360, 7 S.E. 217, 218 (1887)).

Moreover, plaintiff presented substantial evidence at trial of severe emotional distress. Testimony at trial showed, for example, that plaintiff cried easily, lost weight, appeared sickly, and lost his self respect, and that this emotional distress made him unable to work effectively for a period of time. Most significantly, plaintiff testified that the actions of his wife and defendant "broke [his] heart very badly." As Blackstone described the civil injury in cases of criminal conversation, "surely there can be no greater." William Blackstone, 3 Commentaries *139.

Defendant argues that the cause of action for criminal conversation is specifically identified in the three-year statute of limitations contained in N.C.G.S. § 1-52(5), and therefore the discovery rule does not apply to criminal conversation cases. In this argument defendant focuses on the language in N.C.G.S. § 1-52(16) which applies the discovery rule to certain cases "[u]nless otherwise provided by statute."

Defendant's interpretation is both inaccurate and inequitable, unduly preventing recovery by an injured spouse. N.C.G.S. § 1-52(5)'s reference to criminal conversation does not bar the application of N.C.G.S. § 1-52(16) when the injury is latent. Instead, we interpret N.C.G.S. §§ 1-52(5) and 1-52(16) together to mean that the three year statute of limitations for criminal conversation begins to run when the tort is discovered or should have been discovered, not upon com-

pletion of the last act constituting the offense. We have rejected and continue to reject defendant's approach. This Court has applied the discovery rule to other subsections of N.C.G.S. § 1-52. *See, e.g., Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 492-94, 329 S.E.2d 350, 353-55 (1985) (applying N.C.G.S § 1-52(16) to claims of liability arising out of a contract enumerated in N.C.G.S. § 1-52(1)). Furthermore, although decisions of the Court of Appeals are clearly not binding on this Court, both this Court and the Court of Appeals have applied N.C.G.S. § 1-52(16) to other actions embraced by N.C.G.S. § 1-52(5)—the statutory section that explicitly lists actions for criminal conversation. *See Wilson v. McLeod Oil Co.*, 327 N.C. 491, 511, 398 S.E.2d 586, 596 (1990) (applying N.C.G.S. § 1-52(16) to bar statutorily created claims of liability referenced in N.C.G.S. § 1-52(2) and negligence claims controlled by 1-52(5)); *Zenobile v. McKecuen*, 144 N.C. App. 104, 108, 548 S.E.2d 756, 759 (2001) (noting the applicability of N.C.G.S. § 1-52(16) to actions for intentional infliction of emotional distress covered by N.C.G.S § 1-52(5)); *Johnson v. Podger*, 43 N.C. App. 20, 25, 257 S.E.2d 684, 688 (applying predecessor discovery rule now codified in N.C.G.S. § 1-52(16) to medical malpractice action governed by N.C.G.S. § 1-52(5) at that time), *cert. denied*, 298 N.C. 806, 261 S.E.2d 920 (1979).

Construing the phrase "unless otherwise provided by statute" to prohibit application of the discovery rule to actions listed in N.C.G.S. § 1-52 would render the remainder of N.C.G.S. § 1-52(16) meaningless. Personal injuries are covered in N.C.G.S. § 1-52(5), and therefore, under defendant's argument, the discovery rule would not toll the running of the statute of limitations in personal injury actions even though N.C.G.S. § 1-52(16) specifically applies to "personal injury." *See* N.C.G.S. § 1-52(5) ("For criminal conversation, or for any other *injury to the person* . . . .") (emphasis added); *id.* § 1-52(16) ("Unless otherwise provided by statute, for *personal injury* . . . .") (emphasis added).

Application of the discovery rule to claims for criminal conversation accords with North Carolina's demonstrated interest in protecting the sanctity of marriage and preserving the institution of the family. *See McCutchen v. McCutchen*, 360 N.C. 280, 284, 624 S.E.2d 620, 624 (2006) (discussing, in an alienation of affections case, how "[c]ommencing the statute of limitations only after alienation is complete comports with North Carolina's public policy favoring the protection of marriage"); *see also* N.C.G.S. § 8-56 (2005) (providing that in civil actions, "[n]o husband or wife shall be compellable in any

event to disclose any confidential communication made by one to the other during their marriage"); N.C.G.S. § 8-57(c) (2005) (providing that in criminal actions, "[n]o husband or wife shall be compellable in any event to disclose any confidential communication made by one to the other during their marriage"); *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) (per curiam) (order vacating Court of Appeals decision purporting to abolish causes of action for criminal conversation and alienation of affections in North Carolina).

Failure to apply the discovery rule to actions for criminal conversation has the unacceptable consequence of rewarding a defendant, as in the present case, for deceptive and clandestine behavior that successfully prevents discovery of the extramarital conduct until after the three year statute of limitations has expired. "Until plaintiff discovers the wrongful conduct of defendant, [he] is unaware that [he] has been injured in the legal sense." *Black v. Littlejohn*, 312 N.C. 626, 639, 325 S.E.2d 469, 478 (1985). It is contrary to notions of fundamental fairness to suggest the statute of limitations barred plaintiff's claim before he became aware of defendant's tortious conduct—especially because defendant's deceptive denial, even in the face of direct confrontation, delayed plaintiff's discovery.

We reverse the decision of the Court of Appeals as to the applicability of the discovery rule of N.C.G.S. § 1-52(16) to claims for criminal conversation. However, as to the additional assignments of error raised by defendant at the Court of Appeals but not addressed by that court, this case is remanded to that court for consideration of those issues. Consequently, we conclude that defendant's petition for writ of certiorari as to additional issues was improvidently allowed.

REVERSED AND REMANDED; CERTIORARI IMPROVIDENTLY ALLOWED.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

Chief Justice PARKER dissenting.

In my view the Court of Appeals' majority correctly determined that because "the cause of action for criminal conversation is specifically identified in the three-year statute of limitations contained in § 1-52(5), the discovery exception does not apply to criminal conver-

sation cases." *Misenheimer v. Burris*, 169 N.C. App. 539, 542, 610 S.E.2d 271, 273 (2005).

The elements necessary to support a claim for criminal conversation are marriage and sexual intercourse between the defendant and the plaintiff's spouse during the existence of the marriage. *See Bryant v. Carrier*, 214 N.C. 191, 194-95, 198 S.E. 619, 621 (1938); *see also* 1 Suzanne Reynolds, *Lee's North Carolina Family Law* § 5.46(B), at 402 (5th ed. 1993) [hereinafter *Family Law*]. Criminal conversation is frequently described as a strict liability tort in that a plaintiff may prevail even if the defendant was unaware of the marriage. A plaintiff is not required to prove love and affection in the marriage or any negative effect on the marriage by the sexual intercourse. *See, e.g., Family Law* § 5.46(B), at 403-04.

A plaintiff must file an action within three years for "criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." N.C.G.S. § 1-52(5) (2005). The discovery rule provides an exception for latent injuries or damages:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.

*Id.* § 1-52(16).

By its very terms, the discovery rule exception excludes from its scope those actions provided for elsewhere in the statutes and includes only those claims involving "personal injury or physical damage to claimant's property." The tort of criminal conversation is specifically provided for in section 1-52(5); hence, the exception does not apply.

Contrary to the assertions of the majority, the language of the discovery rule is unambiguous with respect to its use of the term "personal injury." Immediately after the term "personal injury," the statute refers to the accrual of a cause of action upon a claimant's discovery of "bodily harm." Thus, the type harm contemplated by the General Assembly in laying out the exception to the three year statute of limitations that would otherwise apply is latent, physical, "bodily" harm: in other words, the type harm that would give rise to an action for personal injury. The effect of the majority's opinion would be to pro-

vide, in essence, a claim for personal injury to an aggrieved spouse seeking damages for the separate strict liability tort of criminal conversation. The injury giving rise to a cause of action for criminal conversation is to the spousal relationship; any particular harm suffered by the plaintiff may be considered on the issue of damages but is not an element of the tort of criminal conversation. *See, e.g., Bryant,* 214 N.C. at 194, 198 S.E. at 621; *Cottle v. Johnson,* 179 N.C. 426, 428-29, 102 S.E. 769, 770 (1920).

I would vote to affirm the majority opinion of the Court of Appeals below; therefore, I respectfully dissent.