THACKER, Circuit Judge,
concurring:
I concur in the majority’s outcome, but I write separately for three reasons. First, I would not .rely so heavily on our decision in Hyer v. Pittsburgh Coming Corp., 790 . F.2d 30 (4th Cir.1986), which construed a North Carolina statute significantly different than the one at bar, and which has never been cited in a reported North Carolina, decision. Second, I address Appel-lee’s unfounded argument that there is no “meaningful difference” between the claims in CTS v. Waldburger, — U.S. -, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), and the claim in this case. Finally, I note that a North Carolina certified question mechanism would have provided us with a beneficial tool in deconstructing this novel and unsettled state law issue, which four circuits have now addressed with varying results.
I.
This case boils down to the meaning of the phrase “personal injury” in N.C. Gen. Stat. § 1-52(16). If the North Carolina Supreme Court would read this phrase to encompass disease claims, Appellant’s claim is barred. If not, the claim proceeds.
A.
In determining whether disease claims fall within the meaning of “personal injury,” the majority turns first to this court’s decision in Hyer v. Pittsburgh Corning Corp., which states, “the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it.” 790 F.2d 30, 33-34 (4th Cir.1986) (emphasis supplied) (internal quotation marks omitted). Because Hyer construed a different statute, relied on a North Carolina decision characterizing § 1-52(16) quite broadly, and has not been cited by a reported North Carolina decision, I would consider the passage above “non-binding dicta.” See Ante at 100-01.
Hyer construed a North Carolina statute of repose, N.C. Gen.Stat. § 1-50(6), which provided a bar to recovery for damages “for personal injury” based on a product failure or defect, if the claim was brought more than six years after “the date of initial purchase for use or consumption.” N.C. Gen.Stat. ..§ 1-50(6) (1979). In concluding that § l-50(6)’s statute of repose did not apply to.claims based on disease, Hyer relied heavily on the North Carolina Supreme Court’s decision in Wilder v. Amatex Corp., 314 N.C. 550, 336 S.E.2d 66 (1985), which held that the statute of repose in the repealed N.C. Gen.Stat. § l-15(b) did not apply to disease claims. See Hyer, 790 F.2d at 33 (stating that in Wilder, the North Carolina Supreme Court “concluded], that ‘the legislature intended [§ l-15(b)] to have no application to claims arising from disease’ ” (quoting Wilder, 336 S.E.2d at 73).)
But in 1986, when Hyer stated the rule upon which the majority relies, § 1-52(16) had been on the books over six years, and even though it, too, contained a statute of repose ostensibly directed to “personal injuries],” Hyer failed to • mention § 1-52(16). Moreover, Wilder specifically con *112 trasted § 1-52(16) with § l-15(b), stating, “We note, importantly, that G.S. l-15(b) is not intended to be a statute of limitations governing all negligence claims, such as the statute of limitations contained in the first clause of G.S. 1-52(16).” Wilder, 336 S.E.2d at 69 (emphasis supplied). Thus, an equally permissible reading of Hyer— against the legal landscape at the time — is that § 1-52(16) was not included in the umbrella of “statutes of repose directed at personal injury claims” because it applied generally to “all negligence claims.”
In addition, the language of § l-15(b) differed significantly from the language of § 1-52(16). By its terms, § l-15(b) applied to “cause[s] of action ... having as an essential element bodily injury to the person ... not readily apparent to the claimant at the time of its origin,” and stated that in “such cases,” i.e., cases involving a latent bodily harm, a 10-year statute of repose applies. GemStat. § 1-15(b) (repealed 1979). Section 1-52(16), which replaced § l-15(b), contains broader language, applying to “personal injury ... cause[s] of action,” and stating — without qualification — that “no cause of action shall accrue” more than 10 years after the defendant’s last act or omission. As explained by the majority, we now have more guidance from North Carolina state courts as to the breadth of § 1-52(16). But at the time of the Hyer decision, Wilder was the only North Carolina decision comparing § l-52(16)’s language to that of § 1-15(b), and it suggested that § 1-52(16) is much broader than its predecessor statute. Therefore, Hyer’s reading of Wilder— which construed a statute specifically encompassing claims involving bodily injuries not apparent to the claimant when they occur — does not dictate the same result for stare decisis purposes regarding a statute generally referencing “personal injuries].”
Finally, although certainly not disposi-tive, in predicting, what the North Carolina Supreme Court would do in this situation, I am reluctant to afford substantial weight to a decision that has never been cited in a reported North Carolina state court decision. Indeed, Hyer has only been cited by this court in four decisions in 30 years, and even then, only in the context of § 1-50(6). See Bullard v. Daikon Shield Trust, 74 F.3d 531, 533-34 (4th Cir.1996); Guy v. E.I. DuPont de Nemours & Co., 792 F.2d 457, 459-60 (4th Cir.1986); Silver v. Johns-Manville Corp., 789 F.2d 1078, 1080 (4th Cir.1986); Burnette v. Nicolet, Inc., 818 F.2d 1098, 1101 (4th Cir.1986).
B.
However, even without the binding authority of Hyer, I agree with the majority that the North Carolina Supreme Court would likely treat the case at hand as falling outside the scope of the statute of repose in § 1-52(16).
Post-Hyer, the North Carolina Supreme Court made clear that the phrase “personal injury” as used in § 1-52(16) “has a wide range of meanings”; is ambiguous; and placed in the proper context, must be a “latent” injury, i.e., an injury not “ ‘reasonably ... apparent’ ” to the claimant at the time it occurs. Misenheimer v. Burris, 360 N.C. 620, 637 S.E.2d 173, 175 (2006) (quoting Gen.Stat. § 1-52(16) (2005)).
At first blush, one would think a disease is — or at least breeds — a latent injury. But that is not the way North Carolina sees it. North Carolina has recognized that diseases can be “the result [not] of a single incident but rather of prolonged exposure to hazardous conditions of a disease-causing agent.” Booker v. Duke Med. Ctr., 297 N.C. 458, 256 S.E.2d 189, 204 (1979). Thus, the “legal injury and awareness of that injury occur simulta *113 neously at diagnosis.” ' Ante at 110 (citing Wilder, 336 S.E.2d at 70-71).
For these reasons — and those more cogently set forth in Section IV of the majority opinion — I agree that the North Carolina Supreme Court would not view Appellant’s' disease claim as a “personal injury” under § 1-52(16).
II.
Second, like the majority, I too reject Appellee’s argument that the Supreme Court’s decision in CTS Corp. v. Waldburger, — U.S. -, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), dictates our outcome. See Ante at 107 n. 6. Appellee submits “there is no meaningful difference between the Waldburger claims and [Appellantj’s claim,” and “[Appellant’s] action was properly dismissed for the same reasons as in Waldburger.” Appellee’s Br. 8-9. It is true that in both cases, “the last alleged act or omission” of CTS occurred decades before suit was filed. Id. at 8. And it is also true that the statute of repose provision in § 1-52(16) applies to claims based on “physical damage to [one’s] property” (one of the bases for Waldburger’s nuisance claim) and “personal injury.” Gen. Stat. § 1-52(16).
However, in Waldburger, the Supreme Court did not address whether the plaintiffs’ claims may be subject to the statute of repose in Gen.Stat. § 1-52(16), as written. Rather, the issue in Waldburger was whether the Comprehensive Environmental Response, Compensation and Liability Act (“CERCLA”) preempted that statute of repose. After the Supreme . Court’s Waldburger decision, leaving the statute of repose intact, this case 'takes the next step of asking whether Appellant’s disease claim falls within its parameters. In making this argument, CTS basically-ignores the crux of this appeal. Therefore, Wald-burger is inapplicable here.
III.
Finally, I write to express my view that a North Carolina certification procedure would have provided this panel with a beneficial tool. As we have-noted many times, North Carolina is the only state in the Fourth Circuit without such a mechanism. See In re McCormick, 669 F.3d 177, 182 n. * (4th Cir.2012) (“North Carolina law ... does not provide a mechanism by which we could certify the question to North Carolina’s Supreme Court, unlike the law in the other States in the circuit.”); see also United States v. Vinson, 805 F.3d 120, 122 n. 1 (4th Cir.2015); Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir.2013); Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 783 n. 4 (4th Cir.2012); E.M.A. ex rel. Plyler v. Cansler, 674 F.3d 290, 312 n. 1 (4th Cir.2012); MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 284 (4th Cir.2008); N. Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 711-12 n. 1 (4th Cir.1999). Indeed, North Carolina remains the only state in the nation never to have enacted some form of certification procedure. See Erie Eisenberg, A Divine Comity: Certification (at Last) in North Carolina, 58 Duke L. J. 69, 71 (2008). This is despite numerous calls to do so. See id. at 71 n. 18 (citing Jessica Smith, Avoiding Prognostication and Promoting Federalism:. The Need for an Inter-Jurisdictional Certification Procedure in North Carolina, 77 N.C. L.Rev. 2123, 2125 (1999)); Jona Goldschmidt, Certification of Questions of Law: Federalism in Practice 98.(1995); J. Donald Hobart, Jr., Note, B. Currie v. United States and the Elusive “Duty to Commit” Dangerous Mental Patients: Conflicting Views of North Carolina Law from the Federal Courts, 66 N.C. L. Rev. 1311, 1334 & n. 162 (1988).
As a federal court sitting in diversity, “our role is to apply governing state law, *114 or, if necessary, predict how the state’s highest court would rule on an unsettled issue.” Horace Mann Ins. Co. v. Gen. Star Natl Ins. Co., 514 F.3d 327, 329 (4th Cir.2008) (internal quotation marks omitted). Because the issue presented in this appeal is not settled by the North Carolina courts, we must, in-a sense, “trade our judicial robes for the garb of prophet.” Walters v. Inexco Oil Co., 670 F.2d 476, 478 (5th Cir.1982) (alteration and internal quotation marks omitted). Some characterize the process of predicting what a state court would do as “speculative or crystal-ball gazing,” but without the benefit of a certification procedure, “it is a task which we may not decline.” McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662 (3d Cir.1980).
The case at hand presents an ideal candidate for certification, as the issue before us is especially “novel” and “unsettled.” See Grattan v. Bd. of Sch. Comm’rs of Baltimore City, 805 F.2d 1160, 1164 (4th Cir.1986) (certification is appropriate “when [we are] required to address a novel issue of local law which is determinative in the case before [us]”); cf. Md.Code Ann., Cts. & Jud. Proc. § 12-603 (providing that the Court of Appeals may answer a certified question if “[1] the answer may be determinative of an issue in pending litigation in the certifying court and [2] there is no controlling appellate decision, constitutional provision, or statute of this State”); Va. Sup.Ct. Rule 5:40(a) (Supreme Court may answer a certified question if the “question of Virginia law is determinative in any proceeding pending before the certifying court and it appears’ there is no controlling precedent on point in the decisions of this Court or the Court of Appeals "of Virginia”).
The Supreme Court of North Carolina itself has sent mixed signals about the scope of § 1-52(16). Compare Dunn v. Pac. Emp’rs Ins. Co., 332 N.C. 129, 418 S.E.2d 645, 647-48 (1992) (holding that, in an action based on the decedent’s death from cancer based on exposure to hazardous chemicals, § 1-52(16) would be the proper statute of limitations for the underlying claim for bodily injury), and Wilder, 336 S.E.2d at 69 (suggesting that “the statute of limitations contained in the first clause of G.S. 1-52(16)” “govern[s] all negligence claims”), with Boudreau v. Baughman, 322 N.C. 331, 368 S.E.2d 849, 853 n. 2 (1988) (suggesting that § 1-52(16) was “intended to apply to plaintiffs with latent injuries,” and is “inapplicable” to claimants who are “aware of [their] injury as soon as it occur[s]”), and Misenheimer, 637 S.E.2d at 175-76 (explaining that latent injury claims remain subject to the statute of repose in § 1-52(16)); see also Ante at 109-10.
And outside of North Carolina’s ^orders, after the publication of this decision, four circuits.will have addressed this state law question, all with different views of the statute’s scope. Compare In re Dow Corning Corp., 778 F.3d 545, 552 (6th Cir.2015) (“The Fourth Circuit has consistently applied th[e] ‘disease exception,’ first announced by the North Carolina Supreme Court in Wilder v. Amatex, to diseases incurred from exposure to harmful products”), and Bryant v. United States, 768 F.3d 1378, 1381 (11th Cir.2014) (holding that the statute of repose in § 1-52(16) unambiguously applies to disease claims), and Klein v. DePuy, Inc., 506 F.3d 553, 559 (7th Cir.2007) (in holding that “§ 1-52(16) is .not limited to latent injury claims,” relying on, Dunn and Wilder, rejecting Hyer, and ignoring Misenheimer).
North Carolina’s General Assembly acted swiftly to revise § 1-52(16) with regard to groundwater contamination claims after the Supreme Court’s Waldburger decision. Since our crystal ball is warmed up, per *115 haps we can predict that the General Assembly will also act swiftly, after this decision, to delineate the parameters of the statute of repose in that same statute— including whether disease claims are indeed exempt, and if so, what is a “disease” claim, exactly. Cf. Dow Corning, 778 F.3d at 555 (Sutton, J., dissenting) (explaining that the so-called “disease exception” in § 1-52(16) “appears limited to diseases that arise from exposure to a harmful product at one’s jobsite” (emphasis in original)). And maybe the State of North Carolina will likewise act swiftly to create a certified question mechanism, giving its own state courts a chance to influence the interpretation of the laws operating within its borders, rather than leaving it to the federal courts to divine how North Carolina should operate.