IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-143

Filed 12 September 2023

Mecklenburg County, No. 21CVS10855

GREGORY COHANE, Plaintiff,

v.

THE HOME MISSIONERS OF AMERICA d/b/a GLENMARY HOME MISSIONERS, ROMAN CATHOLIC DIOCESE OF CHARLOTTE, NC, AND AL BEHM, Defendants.

Appeal by plaintiff from order entered 27 October 2021 by Judge Daniel A. Kuehnert in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 June 2023.

> *White & Stradley, PLLC, by Leto Copeley and J. David Stradley, for plaintiff-appellant.*

> *Poyner & Spruill, LLP, by Steven B. Epstein, for defendant-appellee The Home Missioners of America, et al.*

> *Troutman Pepper Hamilton Sanders, LLP, by Joshua D. Davey and Mary K. Grob, for defendant-appellee Roman Catholic Diocese of Charlotte, NC.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Orlando L. Rodriguez, for the North Carolina Attorney General's Office, amicus curiae.*

> *Tin, Fulton, Owen, & Walker, by Sam McGee, for Child USA, amicus curiae.*

> *Skye Alexandria David, for the North Carolina Coalition Against Sexual Assault, amicus curiae.*

GORE, Judge.

Plaintiff, Gregory Cohane, appeals the trial court's interlocutory Order Denying in Part and Granting in Part Defendants' Motions to Dismiss and Denying

as Moot Plaintiff's Motion to Transfer. The trial court certified the Order as a final judgment pursuant to Rule 54(b), as it determined there was "no just reason for delay in entry of final judgment on Plaintiff's claims against [defendant] Glenmary and [defendant] the Diocese." Upon review of the parties' briefs and the record, we reverse and remand for further proceedings.

**I.**

In 1972, defendant Al Behm met plaintiff while Behm was assigned by defendant, Glenmary Home Missioners ("Glenmary"), to a Roman Catholic parish in Connecticut. Behm befriended plaintiff, who was nine years old at the time, and became his "loving, kind and supportive adult presence" compared to plaintiff's emotionally and verbally abusive parents. Behm regularly visited plaintiff's home and eventually invited plaintiff for overnight stays and for overnight trips, which plaintiff's parents consented to. During these times, Behm began grooming plaintiff.

Glenmary reassigned Behm to a parish in Kentucky but Behm maintained connection with plaintiff through mail and phone calls. While in Kentucky, Behm was accused of child sexual abuse, but this was never reported to authorities; instead, Behm was transferred to Cincinnati. While Behm pursued a degree in human sexuality, financed by Glenmary, Behm invited plaintiff and a friend to visit. During this visit, Behm performed sexual acts on plaintiff. Behm was later assigned by Glenmary and defendant Roman Catholic Diocese of Charlotte ("Diocese") to be the campus clergy at Western Carolina University ("WCU") campus. Glenmary and the

Diocese did not give any information about the prior child sexual abuse allegations to staff at WCU. Behm continued to sexually abuse plaintiff through phone calls and overnight visits to North Carolina. Behm introduced plaintiff to alcohol, marijuana, and amyl nitrates, and convinced both plaintiff and his parents that plaintiff should go to college at WCU.

While plaintiff attended WCU, Behm continued to sexually abuse him. During this time, Behm was required to travel to a "support group" to meet with other Glenmary clergy who had been accused of child sexual abuse but were still employed. In 1983, according to plaintiff, the Diocese reassigned Behm to Tennessee because of his sexual misconduct with plaintiff. In Tennessee, Behm was accused yet again of child sexual abuse.

On 6 July 2021, plaintiff filed this lawsuit at the age of 57, in reliance upon the passage of Session Law 2019-245 (the "SAFE Child Act"), and specifically, the revival provision in section 4.2(b) of the Act that revived previous civil claims for child sexual abuse barred by the statute of limitations in Section 1-52. Plaintiff brought civil claims against Glenmary and the Diocese for negligence, negligent assignment, supervision, and retention. Plaintiff brought civil claims against Behm for assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. Glenmary and the Diocese filed motions to dismiss and amended motions to dismiss under Rules 12(b)(1), 12(b)(6) and 9(k). They specifically argued plaintiff's claims were time-barred because the SAFE Child Act did not apply to these

claims. Plaintiff filed a motion to transfer the 12(b)(6) motions to a three-judge panel because defendants also facially challenged the constitutional validity of the revival provision.

The trial court set the motions to dismiss for hearing on 27 September 2021. The trial court determined plaintiff's claims did not fall within the revival provision's scope. Accordingly, the trial court granted defendants' motions to dismiss in part because it determined plaintiff's claims were time-barred, denied defendants' motion to dismiss in part for lack of subject matter jurisdiction, and denied plaintiff's motion to transfer as moot. Further the trial court certified the order as final for defendants Glenmary and the Diocese pursuant to Rule 54(b). Plaintiff timely appealed this order.

**II.**

Plaintiff appeals of right pursuant to N.C. R. Civ. P. 54(b) and section 7A-27(b). Plaintiff argues the trial court erred by granting the Rule 12(b)(6) motions on the basis plaintiff's claims are time-barred by section 1-52. Plaintiff argues the trial court erroneously interpreted section 4.2(b), within the SAFE Child Act, narrowly to exclude claims for negligence, negligent retention, assignment, and supervision. We agree.

We review challenges to Rule 12(b)(6) motions to dismiss de novo. *Hinson v. City of Greensboro*, 232 N.C. App. 204, 208, 753 S.E.2d 822, 826 (2014). "Issues of

statutory interpretation are also subject to [de novo] review." *Swauger v. Univ. of N.C. at Charlotte*, 259 N.C. App. 727, 728, 817 S.E.2d 434, 435 (2018).

In November 2019, the General Assembly unanimously adopted the SAFE Child Act, which was signed into law by Governor Cooper, to protect children from sexual abuse and to strengthen and modernize sexual assault laws. SAFE Child Act, 2019 N.C. Sess. Laws 1231, ch. 245 (2019). Within the Act, the General Assembly included a part to "Extend Civil Statute of Limitations and Require Training" in which it amended sections 1-17 and 1-52 of the North Carolina General Statutes. 2019 N.C. Sess. Laws 1231, 1234–35, ch. 245. It amended section 1-17 to include the following provision: "(d) Notwithstanding the provisions of subsections (a), (b), (c), and (e) of this section, a plaintiff may file a civil action against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age until the plaintiff attains 28 years of age." 2019 N.C. Sess. Laws 1231, 1234, ch. 245, sec. 4.1(d). Within its amendment to section 1-52, it included the following provision, "Effective from January 1, 2020, until December 31, 2021, this section revives any civil action for child sexual abuse otherwise time-barred under G.S. 1-52 as it existed immediately before the enactment of this act." 2019 N.C. Sess. Laws 1231, 1235, ch. 245, sec. 4.2(b).

Plaintiff initiated his lawsuit within the window of time set by section 4.2(b) with claims of negligence, negligent supervision, assignment, and retention against Glenmary and the Diocese. The trial court granted defendants' motions to dismiss

because it determined plaintiff's lawsuit was time-barred under section 1-52. It reasoned the phrase "any civil action for child sexual abuse" only included claims against the perpetrator of the sexual abuse, and therefore, the claims brought against Glenmary and the Diocese fell outside the scope of section 4.2(b). It determined this phrase was "narrow and limited" due to the "broader language" within section 4.1(d) that states "a plaintiff may file a civil action against a defendant for claims *related to* sexual abuse." The trial court made this comparison to ascertain the intent of the legislature. In essence, the trial court narrowed the scope of section 4.2(b) through its comparison of the words "related to" and "for," because it determined the differing language in each provision represented legislative intent.

Our Supreme Court applies the following rules to interpret statutes:

> In construing this statutory language, we are guided by long-standing rules of statutory interpretation. First, if a statute is clear and unambiguous, no construction of the legislative intent is required and the words are applied in their normal and usual meaning. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. Additionally, if a statute is remedial in nature, seeking to advance the remedy and repress the evil it must be liberally construed to effectuate the intent of the legislature.

*Misenheimer v. Burris*, 360 N.C. 620, 623, 637 S.E.2d 173, 175 (2006) (cleaned up).

We recently addressed this revival statutory provision in *Doe v. Roman Catholic Diocese of Charlotte.* 283 N.C. App. 177, 872 S.E.2d 810 (2022) ("*Doe* 2022"). The plaintiff had previously filed a lawsuit in 2011 against the Diocese alleging the following claims: constructive fraud, breach of fiduciary duty, fraud and fraudulent

concealment, negligent supervision and retention, civil conspiracy, negligent infliction of emotional distress, intentional infliction of emotional distress, and equitable estoppel. *Id.* at 178, 872 S.E.2d at 812.[1]  These claims were time-barred under the statute of limitations. *Doe* 2015, 242 N.C. App. at 545, 775 S.E.2d at 923. In *Doe* 2022, plaintiff filed the second lawsuit against the Diocese after the passage of the SAFE Child Act, and in reliance on the section 4.2(b) revival provision. 283 N.C. App. at 178, 872 S.E.2d at 812.  The plaintiff asserted the following claims in the second lawsuit: assault and battery, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, breach of fiduciary duty, constructive fraud, and misrepresentation and fraud. *Id.*

We ultimately ruled that the plaintiff's claims were precluded under the doctrine of res judicata. *Id.* at 181, 872 S.E.2d at 814.  However, we noted in that case the revival provision "revive[d] only civil actions for child sexual abuse otherwise time-barred and does not revive civil actions . . . barred by disposition of a previous action." *Id.* at 180, 872 S.E.2d at 813.  We also suggested in dicta that plaintiff's claims would have been viable under the revival provision if not for the prejudicial dismissal in *Doe* 2015. *Id.* at 181, 872 S.E.2d at 814.

---

[1] We noted the plaintiff "abandoned" his negligent supervision and retention, civil conspiracy, negligent infliction of emotional distress, and intentional infliction of emotional distress claims prior to summary judgment. *Doe v. Roman Catholic Diocese of Charlotte, NC*, 242 N.C. App. 538, 542 n.2, 775 S.E.2d 918, 921 n.2 (2015) ("*Doe* 2015").

We discuss *Doe* 2015 and *Doe* 2022 at length, because within these cases lie the subtle recognition that section 4.2(b) may be interpreted through its plain language as there is no ambiguity in the legislature's word usage. Nor does the language "related to" and "for" need to be distinguished. The trial court appears to have bypassed the plain language of the statute, and immediately sought to discern legislative intent through the use of pari materia foregoing the "longstanding rules of statutory interpretation." *Misenheimer*, 360 N.C. at 623, 637 S.E.2d at 175. In so doing, the trial court had to add language to the revival provision to make the provision fit within its opinion of the legislature's intent. Treading beyond the well-trodden path of methodical statutory interpretation is what leads to such tortured results, which are unnecessary when the plain language provides the courts with direction.

The legislature marked out the broad nature of section 4.2(b) by using the term "any" as a modifier of civil action, and including section 1-52, which includes the civil claims raised by plaintiff. The only limit, based upon the plain language, is that the civil actions concern child sexual abuse allegations. Interpreting section 4.2(b) in this manner does not detract from the language in section 4.1(d). Had the legislature intended to limit the revival provision to torts by the perpetrator, as defendants suggest, the legislature could have specified the subsections within section 1-52, but it did not specify any subsections. Accordingly, what was previously suggested in dicta we now hold, that the plain language of section 4.2(b) includes the civil claims

brought by plaintiff for his childhood sexual abuse allegations. Therefore, the trial court erred by interpreting section 4.2(b) narrowly and dismissing plaintiff's claims as outside the scope of the revival provision.

Defendants also raise issues of constitutionality and that the claims were alternatively dismissed for failure to state a claim upon which relief may be granted. We decline to consider these issues, as we only address the issues raised by plaintiff on appeal and expressly determined by the trial court.

**III.**

For the foregoing reasons, we conclude the trial court erred in dismissing plaintiff's claims with prejudice on the basis they were not revived by section 4.2(b) and were therefore time-barred. Accordingly, we reverse the trial court's order granting defendant's motions for failure to file a complaint within the statutory limitations and denying as moot plaintiff's motion to transfer.

REVERSED AND REMANDED.

Judge RIGGS concurs.

Judge CARPENTER dissents by separate opinion.

No. COA22-143 – *Cohane v. The Home Missioners of Am.*

CARPENTER, Judge, dissenting.

I respectfully dissent from the Majority's opinion. For the same reasons I detailed in my dissent in *McKinney v. Goins*, COA22-261, ___ N.C. App. ___, ___ S.E.2d ___ (2023), I believe the Revival Window of the SAFE Child Act is unconstitutional. Thus, regardless of the asserted scope of the Window, I believe the lower court appropriately dismissed this case. Therefore, I respectfully dissent.